## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------:

In re:                                               :     Chapter 11
                                                     :
SHARPER IMAGE CORPORATION,                           :     Case No. 08-10322(_)
Debtor                                               :
                                                     :
                                                     :
                                                     :
------------------------------------------------------:

## INTERIM ORDER PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, 363 AND 364 AND RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (1) AUTHORIZING INCURRENCE BY THE DEBTOR OF POST-PETITION SECURED INDEBTEDNESS WITH PRIORITY OVER ALL OVER SECURED INDEBTEDNESS AND WITH ADMINISTRATIVE SUPERPRIORITY, (2) GRANTING LIENS, (3) AUTHORIZING USE OF CASH COLLATERAL BY THE DEBTOR PURSUANT TO 11 U.S.C. SECTION 363 AND PROVIDING FOR ADEQUATE PROTECTION, (4) MODIFYING THE AUTOMATIC STAY AND (5) SCHEDULING A FINAL HEARING

THIS MATTER having come before this Court upon motion (the "**DIP Motion**") by Sharper Image Corporation (the "**Debtor**"), as a debtor and debtor-in-possession in the above captioned chapter 11 case (collectively, the "**Case**") seeking, among other things, entry of an interim order (this "**Interim Order**") authorizing the Debtor to:

(i)    Obtain credit and incur debt, pursuant to Sections 363, 364(c) and 364(d) of the Bankruptcy Code, on an interim basis for a period (the "**Interim Period**") from the commencement of the case through and including the date of the Final Hearing (as defined below) up to the aggregate committed amount of $35,000,000 (on terms and conditions more fully described herein) secured by first priority, valid, priming, perfected and enforceable liens (as defined in section 101(37) of chapter 11 of title 11 of the United States Code, as amended (the "**Bankruptcy Code**") on property of the Debtor's estate pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, and with priority, as to administrative expenses, as

provided in section 364(c)(1) of the Bankruptcy Code, subject to the terms and conditions contained herein;

        (ii)     (a) Establish that financing arrangement (the "**DIP Facility**") pursuant to (I) that certain Debtor-In-Possession Credit Agreement (the "**DIP Credit Agreement**")[1], substantially in the form filed of record in the Case and introduced into evidence at the interim hearing on the DIP Motion, by and among Sharper Image Corporation., as borrower (the "**Borrower**"), Wells Fargo Retail Finance LLC, as agent (the "**DIP Agent**"), and the Lenders party thereto (the "**DIP Lenders**," collectively with the DIP Agent, the "**DIP Secured Parties**"), and (II) all other agreements, documents, and instruments executed and/or delivered with, to, or in favor of the DIP Secured Parties, including, without limitation, securities agreements, notes, mortgages, and Uniform Commercial Code ("**UCC**") financing statements and all other related agreements, documents, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as may be amended, modified or supplemented and in effect from time to time, the "**DIP Financing Agreements**"); and (b) incur the "**Obligations**" under and as defined in the DIP Credit Agreement (collectively, the "**DIP Obligations**");

        (iii)    Authorize the use of the proceeds of the DIP Facility (net of any amounts used to pay fees under the DIP Financing Agreements) in each case in a manner consistent with the terms and conditions of the DIP Financing Agreements, and in accordance with the Budget (as defined below) solely for (a) working capital and general corporate purposes, (b) payment of costs of administration of the Cases, to the extent set forth in the Budget, (c) upon entry of this Interim Order, all pre-petition letters of credit issued under the Pre-Petition Financing Agreement

---

[1] Capitalized terms used in this Interim Order but not defined herein shall have the meanings ascribed to such terms in the DIP Credit Agreement.

shall be deemed issued under the DIP Credit Agreement, and (d) upon entry of the Final Order (as defined below), payment in full of the Pre-Petition Debt (as defined below).

(iv)    Grant, pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, the DIP Agent (for the benefit of the DIP Lenders) first priority priming, valid, perfected and enforceable liens, subject only to the Carve-Out (as defined below) and the Prior Permitted Liens (as defined below), upon all of the Debtor's real and personal property as provided in and as contemplated by this Interim Order, the DIP Facility and the DIP Credit Agreement;

(v)    Grant, pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Agent (for the benefit of the DIP Lenders) superpriority administrative claim status in respect of all DIP Obligations, subject to the Carve Out as provided herein;

(vi)    Authorize the use of "cash collateral" as such term is defined in Section 363 of the Bankruptcy Code (the "**Cash Collateral**") in which the Pre-Petition Secured Parties (as defined below) have an interest;

(vii)    Grant the Pre-Petition Agents (for the benefit of the Pre-Petition Secured Parties) (as defined below) Pre-Petition Replacement Liens and Pre-Petition Superpriority Claims (each as defined below) to the extent of any diminution in the value of the Pre-Petition Agents' interest in the Pre-Petition Collateral and make Adequate Protection Payments (as defined below) as adequate protection for the granting of the DIP Liens (as defined below) to the DIP Agent, the use of Cash Collateral, and for the imposition of the automatic stay;

(viii)    Vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Financing Agreements and this Interim Order;

(x)    Schedule a final hearing (the "**Final Hearing**") to consider entry of an order (the "**Final Order**") granting the relief requested in the DIP Motion on a final basis and approve the form of notice with respect to the Final Hearing; and

(xi)    Waive the ten (10) day stay provisions of Federal Rule of Bankruptcy Procedure 6004(h).

The Bankruptcy Court having considered the DIP Motion, the Declaration of Rebecca L. Roedell in support of the Debtor's first day motions and orders, the exhibits attached thereto, the DIP Facility and the DIP Credit Agreement, and the evidence submitted at the hearing on this Interim Order (the "**Interim Hearing**"); and in accordance with Rules 2002, 4001(b), (c), and (d), and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the local rules of the Bankruptcy Court, due and proper notice of the DIP Motion and the Interim Hearing having been given; an Interim Hearing having been held and concluded on February__, 2008; and it appearing that approval of the interim relief requested in the DIP Motion is necessary to avoid immediate and irreparable harm to the Debtor pending the Final Hearing and otherwise is fair and reasonable and in the best interests of the Debtor, its creditors, its estate and its equity holders, and is essential for the continued operation of the Debtor's business; and it further appearing that the Debtor is unable to secure unsecured credit for money borrowed allowable as an administrative expense under Bankruptcy Code section 503(b)(1); and there is adequate protection of the interests of holders of liens on the property of the estates on which liens are to be granted; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by this Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor:

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    **Petition Date**.  On February[___], 2008 (the "**Petition Date**"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware.  The Debtor has continued in the management and operation of its business and property as Debtor-in-Possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Case.

B.    **Jurisdiction and Venue**.  This Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. §§ 157(b) and 1334, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2). Venue for the Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    **Committee Formation**.  A statutory committee of unsecured creditors has not yet been appointed in the Case.

D.    **Notice**.  The Interim Hearing is being held pursuant to the authorization of Bankruptcy Rule 4001 and Local Rule 4001-2.  Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtor, whether by telecopy, email, overnight courier or hand delivery on _____, 2008, to certain parties in interest, including: (i) the Office of the United States Trustee, (ii) the Internal Revenue Service, (iii) the Securities and Exchange Commission, (iv) the Debtor's twenty (20) largest unsecured creditors, (v) counsel to the Pre-Petition Agent (as defined below), (vi) the Pre-Petition Agent (as defined below), (vii) counsel to the proposed DIP Agent, and (viii) all secured creditors of record.   Under the circumstances, such notice of the Interim Hearing and the relief requested in the DIP Motion is due and sufficient notice and complies with sections 102(1), 364(c) and 364(d) of the

Bankruptcy Code, Bankruptcy Rules 2002, 4001(c), 4001(d) and the local rules of the Bankruptcy Court.

       E.     **Debtor's Acknowledgements and Agreements**.  Without prejudice to the rights of parties in interest as set forth in paragraph 7 below, the Debtor admits, stipulates, acknowledges and agrees that (collectively, paragraphs E (i) through E (vii) hereof shall be referred to herein as the "**Debtor's Stipulations**"):

      **(i)**    **Pre-Petition Financing Agreement**.  Prior to the commencement of the Case, Wells Fargo Retail Finance LLC ("**WFRF**") made certain revolving advances (the "**Pre-Petition Revolving Loans**") and a term loan (the "**Term Loan**") to the Borrower, (collectively the Pre-Petition Revolving Loans and the Term Loan, the "**Pre-Petition Facility**") pursuant to (A) the Second Amended and Restated Loan and Security Agreement, dated as of August 20, 2007, by and among the Borrower, WFRF, as agent (the "**Pre-Petition Agent**"), and the Lenders party thereto (the "**Pre-Petition Lenders**", collectively with the Pre-Petition Agent, the "**Pre-Petition Secured Parties**"), and (B) all other agreements, documents, and instruments executed and/or delivered with, to, or in favor of Pre-Petition Secured Parties, including, without limitation, notes, mortgages, and UCC financing statements and all other related agreements, documents, and instruments executed and/or delivered in connection therewith or related thereto (collectively, as may be amended, modified or supplemented and in effect from time to time, the "**Pre-Petition Financing Agreement**");

      **(ii)**    **Pre-Petition Debt Amount**.  As of the Petition Date, the Debtor was indebted under the Pre-Petition Financing Agreement (i) pursuant to the Pre-Petition Revolving Loans in the approximate principal amount of $25,598,702.00, plus letters of credit in the approximate stated amount of $7,909,531.53; (ii) pursuant to the Term Loan in the approximate principal amount of $10,000,000; plus interest accrued and accruing, costs, expenses, fees (including attorneys' fees and legal expenses) other charges and other obligations, including, without limitation, on account of cash management, credit card, depository, investment, hedging and other banking or financial services (collectively the "**Pre-Petition Debt**").

      **(iii)**    **Pre-Petition Collateral**.  To secure the Pre-Petition Debt, the Debtor granted security interests and liens (the "**Pre-Petition Liens**") to the Pre-Petition Secured Parties upon all of the Debtor's assets and personal property (other than Excluded Collateral, as defined in the Pre-Petition Financing Agreement and fee owned real property), including, without limitation, Accounts; Books; Deposit Accounts, Equipment; General Intangibles; Goods, Inventory; Investment Property; Negotiable Collateral; Commercial Tort Claims, Leasehold Interests and Real Property, and the proceeds and products, whether tangible or intangible,

of any of the foregoing, including proceeds of insurance covering any or all of the Collateral and money, deposit accounts, or other tangible or intangible property resulting from the sale, exchange, collection, or other disposition of any of the foregoing, or any portion thereof or interest therein, and the proceeds thereof (each as defined in the Pre-Petition Financing Agreement) (collectively, the "**Pre-Petition Collateral**"),[2] with priority over all other liens except any liens otherwise permitted by the Pre-Petition Financing Agreement (to the extent any such permitted liens are valid, properly perfected, unavoidable, and senior, they are referred to herein as the "**Permitted Prior Liens**"). To avoid any doubt, the term "Permitted Prior Liens" does not include, and specifically excludes, the liens securing the Pre-Petition Debt, which pre-petition liens and claims are to be subordinated to, and junior to, the liens and claims of the DIP Secured Parties.

**(iv)    Pre-Petition Liens**. (a) As of the Petition Date, the Debtor believes that (i) the Pre-Petition Liens are valid, binding, enforceable, and perfected first-priority liens, other than with respect to Excluded Collateral and any fee owned real property, subject only to any Permitted Prior Liens and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (ii) the Pre-Petition Debt constitutes legal, valid and binding obligations of the Debtor, enforceable in accordance with the terms of the Pre-Petition Financing Agreement (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Pre-Petition Debt exists, and no portion of the Pre-Petition Debt is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (iii) the Pre-Petition Debt constitutes allowed secured claims, and (b) on the date that this Interim Order is entered, the Debtor has waived, discharged and released the Pre-Petition Secured Parties, together with their affiliates, agents, attorneys, officers, directors and employees, of any right the Debtor may have (x) to challenge or object to any of the Pre-Petition Debt, (y) to challenge or object to the security for the Pre-Petition Debt, and (z) to bring or pursue any and all claims, objections, challenges, causes of action and/or choses in action arising out of, based upon or related to the Pre-Petition Financing Agreement or otherwise.

The Debtor does not possess and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Financing Agreement or the Pre-Petition Secured Parties' liens, and/or security interests in the Pre-Petition Collateral, or any claim of the Pre-Petition Secured Parties pursuant to the Pre-Petition Financing Agreement.

---

[2]    The acknowledgment and agreement by Debtor of the Pre-Petition Debt and the related liens, rights priorities and protections granted to or in favor of the Pre-Petition Lenders, as set forth herein and in the Pre-Petition Financing Agreement, shall constitute a proof of claim on behalf of the Pre-Petition Lenders in these Cases.

**(v)**    **Cash Collateral.** The Pre-Petition Secured Parties have a security interest in Cash Collateral, including all amounts on deposit in the Debtor's banking, checking, or other deposit accounts and all proceeds of Pre-Petition Collateral to secure the Pre-Petition Debt, to the same extent and order of priority as that which was held by each such party pre-petition.

**(vi)**    **Priming of DIP Facility.** In entering into the DIP Financing Agreements, and as consideration therefor, the Debtor hereby agrees that until such time as all DIP Obligations are indefeasibly paid in full in cash and the DIP Credit Agreement is terminated in accordance with the terms thereof, the Debtor shall not in any way prime or seek to prime the security interests and DIP Liens provided to the DIP Lenders under this Interim Order by offering a subsequent lender or a party-in-interest a superior or pari passu lien or claim pursuant to Section 364(d) of the Bankruptcy Code or otherwise.

F.    **Findings Regarding the Post-Petition Financing.**

(i)    **Need for Post-Petition Financing.** An immediate need exists for the Debtor to obtain funds from the DIP Facility in order to continue operations and to administer and preserve the value of its estate. The ability of the Debtor to finance its operations, to preserve and maintain the value of the Debtor's assets and maximize a return for all creditors requires the availability of working capital from the DIP Facility, the absence of which would immediately and irreparably harm the Debtor, its estate, its creditors and equity holders and the possibility for a successful reorganization or sale of the Debtor's assets as a going concern or otherwise.

(ii)    **No Credit Available on More Favorable Terms.** The Debtor has been unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtor is also unable to obtain secured credit, allowable only under Bankruptcy Code sections 364(c)(2), 364(c)(3), and 364(d) on more favorable terms and conditions than those provided in the DIP Credit Agreement and this Interim Order. The Debtor is unable to obtain credit for borrowed money without granting to the DIP Lenders the DIP Protections (as defined below).

(iii)    **Prior Liens**.  Nothing herein shall constitute a finding or ruling by this Court that any Permitted Prior Liens are valid, senior, perfected and unavoidable.  Moreover, nothing shall prejudice the rights of any party in interest including, but not limited to, the Debtor, the DIP Lenders and any committee appointed pursuant to section 1102 of the Bankruptcy Code to challenge the validity, priority, perfection and extent of any such Permitted Prior Lien and or security interest.

G.    **Section 506(c) Waiver**.  The DIP Secured Parties, and the Pre-Petition Secured Parties will request a waiver of the provisions of sections 506(c) of the Bankruptcy Code as part of the DIP Facility, which request will be delayed until the Final Hearing.  This Court specifically does not approve such 506(c) waiver at this time, but will consider the issue further at the Final Hearing.

H.    **Use of Proceeds of the DIP Facility**.  Proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Financing Agreements) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Credit Agreement, and in accordance with the Budget (as defined below), solely for (a) working capital and general corporate purposes, (b) payment of costs of administration of the Case, to the extent set forth in the Budget, (c) upon entry of this Interim Order, all pre-petition letters of credit issued under the Pre-Petition Financing Agreement shall be deemed issued under the DIP Credit Agreement, and (d) upon entry of the Final Order, payment in full of the Pre-Petition Debt.

I.    **Application of Proceeds of Collateral to Pre-Petition Debt**.  All proceeds of the sale or other disposition of the Collateral (as defined below) shall be applied: (a) first, to permanently reduce the obligations pursuant to the Pre-Petition Revolving Loans and Term Loan, (b) second, to reduce the DIP Obligations in accordance with the DIP Credit Agreement.

Payment of the Pre-Petition Debt in accordance with this Interim Order is necessary as the Pre-Petition Secured Parties will not otherwise consent to the priming of the Pre-Petition Liens. Such payment will not prejudice the Debtor or its estate, because payment of such amounts is subject to the rights of parties-in-interest under paragraph 7 below.

J.      **Adequate Protection for Pre-Petition Secured Parties**.  As a result of the grant of the DIP Liens and the use of Cash Collateral authorized herein, the Pre-Petition Secured Parties are entitled to receive adequate protection pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any decrease in the value of their respective interest in the Pre-Petition Collateral (including Cash Collateral) resulting from the automatic stay or the Debtor's use, sale or lease of the Pre-Petition Collateral (including Cash Collateral) during the Cases.  As adequate protection, the Pre-Petition Agents (for the benefit of the Pre-Petition Secured Parties) will receive: (1) the Pre-Petition Replacement Liens, (2) the Pre-Petition Superpriority Claim, and (3) the Adequate Protection Payments .

K.      **Section 552**.    In light of their agreement to subordinate their liens and superpriority claims (i) to the Carve Out in the case of the DIP Secured Parties, and (ii) the Carve Out and the DIP Liens in the case of the Pre-Petition Secured Parties, the DIP Secured Parties and the Pre-Petition Secured Parties are each entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception shall not apply.

L.      **Extension of Financing**.  The DIP Lenders have indicated a willingness to provide financing to the Debtor in accordance with the DIP Credit Agreement and subject to (i) the entry of this Interim Order and a Final Order, and (ii) findings by the Bankruptcy Court that such financing is essential to the Debtor's estate, that the DIP Lenders are good faith financiers, and that the DIP Lenders' claims, superpriority claims, security interests and liens and other

protections granted pursuant to this Interim Order and the DIP Facility will not be affected by any subsequent reversal, modification, vacatur or amendment of this Interim Order or the Final Order or any other order, as provided in section 364(e) of the Bankruptcy Code.

M.     **Business Judgment and Good Faith Pursuant to Section 364(e)**.  The terms and conditions of the DIP Facility and the DIP Credit Agreement, and the fees paid and to be paid thereunder are fair, reasonable, and the best available under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and consideration; (ii) the DIP Facility was negotiated in good faith and at arms' length between the Debtor, the DIP Lenders and the Pre-Petition Secured Parties, and (iii) use of the proceeds to be extended under the DIP Facility will be so extended in good faith, and for valid business purposes and uses, the consequence of which is that the DIP Lenders are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code.

N.     **Relief Essential; Best Interest**.   The relief requested in the DIP Motion is necessary, essential, and appropriate for the continued operation of the Debtor's business and the management and preservation of the Debtor's assets and personal property. It is in the best interest of Debtor's estates to be allowed to establish the DIP Facility contemplated by the DIP Credit Agreement.

O.     **Entry of Interim Order**.  For the reasons stated above, the Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

**NOW, THEREFORE**, on the DIP Motion of the Debtor and the record before this Court with respect to the DIP Motion, and with the consent of the Debtor, the Pre-Petition Secured Parties, and the DIP Secured Parties to the form and entry of this Interim Order, and good and

sufficient cause appearing therefor,

**IT IS ORDERED** that:

1. **Motion Granted**. The DIP Motion is granted in accordance with the terms and conditions set forth in this Interim Order and the DIP Credit Agreement.

2. **DIP Financing Agreements** .

(a) **Approval of Entry Into DIP Financing Agreements**. The Debtor is expressly and immediately authorized, empowered and directed to execute and deliver the DIP Financing Agreements and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order and the DIP Financing Agreements, and to execute and deliver all instruments and documents which may be required or necessary for the performance by the Debtor under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Financing Agreements. The Debtor is hereby authorized and directed to do and perform all acts, pay the principal, interest, fees, expenses and other amounts described in the DIP Credit Agreement and all other documents comprising the DIP Facility as such become due, including, without limitation, closing fees, administrative fees, commitment fees, letter of credit fees and reasonable attorneys', financial advisors' and accountants' fees and disbursements as provided for in the DIP Credit Agreement which amounts shall not otherwise be subject to approval of this Court; provided, however, that unresolved disputes as to the reasonableness of any professional fees and expenses may be determined by the Bankruptcy Court. Upon execution and delivery, the DIP Financing Agreements shall represent valid and binding obligations of the Debtor enforceable against the Debtor in accordance with its terms.

(b)    **Authorization to Borrow**.  In order to enable it to continue to operate its business, during the Interim Period and subject to the terms and conditions of this Interim Order, the DIP Credit Agreement, documents comprising the DIP Facility, and the Budget (as defined below), the Debtor is hereby authorized under the DIP Facility to borrow up to a total committed amount of $60,000,000 (including the issuance of letters of credit), of which $35,000,000 shall be authorized during the Interim Period, comprised of a senior revolving credit facility with a sublimit for letters of credit up to $10,000,000, in accordance with the terms and conditions of the DIP Credit Agreement.

(c)    **Application of DIP Proceeds**.  The proceeds of the DIP Facility (net of any amounts used to pay fees, costs and expenses under the DIP Credit Agreement) shall be used, in each case in a manner consistent with the terms and conditions of the DIP Credit Agreement, and in accordance with the Budget (as defined below) solely for (a) working capital and general corporate purposes, (b) payment of costs of administration of the Case, to the extent set forth in the Budget, (c) upon entry of this Interim Order, all pre-petition letters of credit issued under the Pre-Petition Financing Agreements shall be deemed issued under the DIP Credit Agreement, and (d) upon entry of the Final Order, payment in full of the Pre-Petition Debt.

(d)    **Conditions Precedent**.  The DIP Lenders shall have no obligation to make any loan or advance under the DIP Credit Agreement during the Interim Period unless the conditions precedent to make such loan under the DIP Credit Agreement have been satisfied in full or waived by the DIP Lenders in its sole discretion.

(e)    **Post-Petition Liens**.  Effective immediately upon the execution of this Interim Order, the DIP Lenders are hereby granted pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, priming first priority, continuing, valid, binding,

enforceable, non-avoidable and automatically perfected postpetition security interests and liens

(collectively, the "**DIP Liens**"), senior and superior in priority to all other secured and unsecured

creditors of the Debtor's estates except as otherwise provided in this Interim Order and the Final

Order, upon and to all presently owned and hereafter acquired assets and real and personal

property of the Debtor, including, without limitation, the following:

(a)    Accounts;

(b)    Equipment;

(c)    General Intangibles, including, without limitation, Payment Intangibles and Intellectual Property, tax refunds and other claims of the Debtor against any Governmental Authority, and all choses in action, goodwill, customer lists, formulae, permits research and literary rights, and franchises;

(d)    Inventory;

(e)    Negotiable Collateral;

(f)    Commercial Tort Claims;

(g)    Deposit Accounts;

(h)    Fixtures;

(i)    Real Property;

(j)    Leases of real property, provided however, that to the extent applicable non bankruptcy law or if a given non-residential real property lease by its express terms prohibits the granting of a lien on any particular leasehold interest, the DIP Liens shall extend only to the proceeds of such leasehold interest;

(k)    Goods;

(l)    Supporting Obligations;

(m)    Negotiable Collateral;

(n)    Securities Accounts, Security Entitlements, Securities, Financial Assets and all other Investment Property, including, without limitation, all ownership or membership interests in any subsidiaries or affiliates (whether or not controlled by the Debtor);

(o)    any money, policies and certificates of insurance, deposits, cash or other assets;

(p)    all of Debtor's Books relating to any of the foregoing ((a) through (o)) and/or to the operation of any Debtor's business, and all rights of access to such Debtor's Books, and all property in which such Debtor's Books are stored, recorded and maintained;

(q)    all insurance proceeds, refunds, and premium rebates, including, without

limitation, proceeds of fire and credit insurance, whether any of such proceeds, refunds, and premium rebates arise out of any of the foregoing ((a) through (p)) or otherwise;

(r)     all liens, guaranties, rights, remedies, and privileges pertaining to any of the foregoing ((a) through (p)), including the right of stoppage in transit; and

(s)     any of the foregoing, and all products, Proceeds (cash and non-cash), substitutions, Accessions and/or replacements of or to any of the foregoing;

provided, however, that the Collateral shall not include any avoidance action under Chapter 5 of the Bankruptcy Code or the proceeds thereof, other than proceeds of any avoidance action brought pursuant to Section 549 of the Bankruptcy Code to recover any post petition transfer of collateral (collectively, the "**DIP Collateral**"and, together with the Pre-Petition Collateral, the "**Collateral**").

(f)     **DIP Lien Priority**.  The DIP Liens to be created and granted to the DIP Lenders, as provided herein, (a) are created pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, (b) are first, valid, prior, perfected, unavoidable, and superior to any security, mortgage, or collateral interest or lien or claim to any of the DIP Collateral, and are subject only to: (x) the Carve Out, and (y) the Permitted Prior Liens.  The DIP Liens shall secure all DIP Obligations.  The DIP Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Cases except for the Prior Permitted Liens; and shall be valid and enforceable against any trustee appointed in the Cases, upon the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (any "**Successor Cases**"), and/or upon the dismissal of any of the Cases.  The DIP Liens shall not be subject to Sections 510, 549, 550 or 551 of the Bankruptcy Code, or if approved in the Final Order, Section 506(c) of the Bankruptcy Code.

(g)    **Enforceable Obligations**.    The DIP Financing Agreements shall constitute and evidence the valid and binding obligations of the Debtor, which obligations shall be enforceable against the Debtor, its estate and any successors thereto and its creditors, in accordance with their terms.

(h)    **Protection of DIP Lenders and Other Rights**.  The DIP Lenders shall have no obligation to make any extension of credit pursuant to the DIP Facility or the DIP Credit Agreement unless all of the conditions precedent to the making of such extension of credit under the DIP Facility or the DIP Credit Agreement are satisfied or waived by the DIP Agent in its sole discretion. From and after the Petition Date, the Debtor shall use the proceeds of the extensions of credit under the DIP Facility only for the purposes specifically set forth in the DIP Credit Agreement and this Interim Order and in strict compliance with the Budget.

(i)    **Superpriority Administrative Claim Status.**  Subject to the Carve Out all DIP Obligations shall be an allowed superpriority administrative expense claim (the "**DIP Superpriority Claim**" and, together with the DIP Liens, the "**DIP Protections**") with priority (except as otherwise provided in paragraph 7 below) in any Case under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in, arising, or ordered pursuant to sections 105, 326, 328, 330 of the Bankruptcy Code (except as otherwise provided in paragraph 7 below), 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726(b), 1113, 1114, and, if approved in the Final Order, Section 506(c), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment. Other than the Carve Out, no costs or expenses of administration, including,

without limitation, professional fees allowed and payable under Bankruptcy Code sections 328, 330, and 331, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to, or (subject to the Pre-Petition Superpriority Claim as set forth herein) on a parity with the DIP Protections or the DIP Obligations, or with any other claims of the DIP Lenders arising hereunder.

3.    **Authorization to Use Cash Collateral and Proceeds of DIP Financing Agreements**.  Pursuant to the terms and conditions of this Interim Order, the DIP Facility and the DIP Credit Agreement, and in accordance with the budget (as the same may be modified from time to time consistent with the terms of the DIP Credit Agreement, the "**Budget**"), filed on record in the Cases and introduced into evidence at the Interim Hearing, the Debtor is authorized to use the advances under the DIP Credit Agreement (during the period commencing immediately after the entry of the Interim Order and terminating upon the earlier to occur of notice being provided by the DIP Agent to the Debtor that an Event of Default has occurred and is continuing, and the termination of the DIP Credit Agreement.  The Budget may be updated (with the consent and/or at the request of the DIP Agent) from time to time, provided that such updated Budget shall be in form and substance acceptable to the DIP Agent, in its reasonable discretion, and the Debtor shall be required always to comply with the Budget and the DIP Credit Agreement pursuant to the terms of the DIP Facility.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtor or its estate outside the ordinary course of business or other proceeds resulting therefrom, except as permitted in the DIP Facility and the DIP Credit Agreement and in accordance with the Budget.

4.    **Adequate Protection for Pre-Petition Secured Parties**.  As adequate protection for the interest of the Pre-Petition Secured Parties in the Collateral (including Cash Collateral) on

account of the granting of the DIP Liens, the Debtor's use of Cash Collateral and other decline in value arising out of the automatic stay or the Debtor's use, sale, depreciation, or disposition of the Pre-Petition Collateral including Cash Collateral, the Pre-Petition Secured Parties shall receive adequate protection as follows:

(a)    **Pre-Petition Replacement Liens**.  Solely to the extent of the diminution of the value of the interest of the Pre-Petition Secured Parties in the Pre-Petition Collateral, the Pre-Petition Secured Parties shall have, subject to the terms and conditions set forth below, pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code additional and replacement security interests and liens in the Collateral (the "**Pre-Petition Replacement Liens**") which shall be junior only to the DIP Liens and the Carve-Out as provided herein.

(b)    **Pre-Petition Superpriority Claim**.  Solely to the extent of the diminution of the value of the interest of the Pre-Petition Secured Parties in the Pre-Petition Collateral, the Pre-Petition Secured Parties shall have an allowed superpriority administrative expense claim (the "**Pre-Petition Superpriority Claim**") which shall have priority (except with respect to the DIP Liens, the DIP Superpriority Claim, and the Carve Out) in any Case under sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code and otherwise over all administrative expense claims and unsecured claims against the Debtor and its estate, now existing or hereafter arising, of any kind or nature whatsoever including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c), 546(d), 726(b), 1113, 1114 and, if approved in the Final Order, Section 506(c)of the Bankruptcy Code.

(c)    **Adequate Protection Payment**.  The Pre-Petition Secured Parties shall receive adequate protection in the form of (i) repayment of the principal amount of the Pre-

18

Petition Debt in accordance with this Interim Order, and (ii) payments in the amount of interest (at the non-default rate), fees, costs, expenses, and other amounts (other than principal) with respect to the Pre-Petition Debt in accordance with the Pre-Petition Financing Agreements (collectively, the "**Adequate Protection Payment**").

(d)     **Pre-Petition Indemnity Account**. Subject to the prior funding of the Carve Out in accordance with paragraph 8 of this Interim Order, upon payment in full of the DIP Obligations and termination of the DIP Credit Facility, the Debtor shall establish an account in the control of the Pre-Petition Agent (the "**Pre-Petition Indemnity Account**"), into which the sum of $250,000 of proceeds of any sale, lease or other disposition of any of the Collateral shall be deposited as security for any reimbursement, indemnification or similar continuing obligations of the Debtor in favor of the Pre-Petition Secured Parties under the Pre-Petition Financing Agreements (the "**Pre-Petition Indemnity Obligations**"); *provided, however*, that the Pre-Petition Indemnity Account shall terminate and all remaining amounts held therein shall be released to the Debtor, if all Pre-Petition Debt has been irrevocably paid in full in cash and the earliest to occur of: (a) the Challenge Period Termination Date if, as of such date, no party has filed or asserted an adversary proceeding, cause of action, objection, claim, defense, or other challenge as contemplated in paragraph 7 hereof, (b) a further order of this Court, (c) the date the Bankruptcy Court enters a final order closing the Cases. The Pre-Petition Indemnity Obligations shall be secured by a first priority lien on the Pre-Petition Indemnity Account.

(e)     **Adequate Protection Upon Sale of Collateral**. Upon the sale of any Collateral pursuant to Section 363 of the Bankruptcy Code, any such Collateral shall be sold free and clear of the Pre-Petition Liens and the Pre-Petition Replacement Liens, provided however,

the such Liens shall attach to the proceeds of any such sale in the order and priority as set forth in this Interim Order and the DIP Credit Agreement.

5.      **Section 507(b) Reservation**.  Nothing herein shall impair or modify the Pre-Petition Secured Parties' rights under Section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Pre-Petition Secured Parties hereunder is insufficient to compensate for the diminution in value of the interest of the Pre-Petition Secured Parties in the Pre-Petition Collateral during the Case or any Successor Case, _provided, however_, that any Section 507(b) claim granted in the Case shall be junior in right of payment to all DIP Obligations and subject to the Carve Out.

6.      **Post-Petition Lien Perfection**.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Pre-Petition Replacement Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect the DIP Liens and the Pre-Petition Replacement Liens or to entitle the DIP Lenders and the Pre-Petition Replacement Liens to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent and the Pre-Petition Agent may, each in their sole discretion, file such financing statements, mortgages, notices of liens and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Case.  The Debtor shall execute and deliver to the DIP Agent and Pre-Petition Agent all such financing statements, mortgages, notices and

other documents as the DIP Agent and the Pre-Petition Agent may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of, the DIP Liens and the Pre-Petition Replacement Liens granted pursuant hereto.    The DIP Agent, in its discretion, may file a photocopy of this Interim Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.    The DIP Agent shall, in addition to the rights granted to it under the DIP Financing Agreements, be deemed to be the successor in interest to the Pre-Petition Secured Parties with respect to all third party notifications in connection with the Pre-Petition Financing Agreements, all Pre-Petition Collateral access agreements and all other agreements with third parties (including any agreement with a customs broker or freight forwarder) relating to, or waiving claims against, any Pre-Petition Collateral, including without limitation, each collateral access agreement duly executed and delivered by any landlord of the Debtor and including, for the avoidance of doubt, all deposit account control agreements and credit card agreements, provided, that the Pre-Petition Agent shall continue to have all rights pursuant to each of the foregoing.

7.    **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**.  Nothing in this Interim Order or the DIP Credit Agreement shall prejudice whatever rights any official committee(s) or any other party in interest with requisite standing (other than the Debtor) may have (a) to object to or challenge the findings herein, including, but not limited to, those in relation to (i) the validity, extent, perfection or priority of the mortgage, security interests and liens of the Pre-Petition Secured Parties in and to the Pre-Petition Collateral, or (ii) the validity, allowability, priority, status or amount of the Pre-Petition Debt, or (b) to bring suit

against the Pre-Petition Secured Parties in connection with or related to the Pre-Petition Financing Agreement, or the actions or inactions of Pre-Petition Secured Parties arising out of or related to the Pre-Petition Financing Agreement; provided, however, that, unless any official committee(s) or any other party in interest with requisite standing commences a contested matter or adversary proceeding raising such objection or challenge, including without limitation any claim against the Pre-Petition Secured Parties in the nature of a setoff, counterclaim or defense to the Pre-Petition Debt (including but not limited to, those under sections 506, 544, 547, 548, 549, 550 and/or 552 of the Bankruptcy Code or by way of suit against the Pre-Petition Secured Parties), within (a) 60 days following the appointment of the first official committee of unsecured creditors, or (b) if no official committee of unsecured creditors is appointed, 75 days following entry of the Final Order (collectively, (a) and (b) shall be referred to as the "**Challenge Period**," and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period shall be referred to as the "**Challenge Period Termination Date**"), upon the Challenge Period Termination Date, any and all such challenges and objections by any party (including, without limitation, any official creditors' committee(s), any Chapter 11 or Chapter 7 trustee appointed herein or in any Successor Case, and any other party in interest) shall be deemed to be forever waived and barred, and the Pre-Petition Debt shall be deemed to be allowed in full and shall be deemed to be allowed as a fully secured claim within the meaning of section 506 of the Bankruptcy Code for all purposes in connection with the Case and the Debtor's Stipulations shall be binding on all creditors, interest holders and parties in interest.  To the extent any such objection or complaint is filed, the Pre-Petition Secured Parties shall be entitled to include such costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending the objection or

complaint as part of the Pre-Petition Debt to the extent allowable under Section 506(b) of the Bankruptcy Code.

8.  **Carve Out**.  During the Interim Period and subject to the terms and conditions contained in this paragraph 8, the DIP Liens, DIP Superpriority Claims, Pre-Petition Replacement Liens and Pre-Petition Superpriority Claim are subordinate only to the following (the "**Carve Out**"): (a) allowed administrative expenses pursuant to 28 U.S.C. Section 1930(a)(6); and (b) allowed reasonable fees and expenses of attorneys and financial advisors employed by the Debtor and any official committee(s) of creditors pursuant to Sections 327 and 1103 of the Bankruptcy Code (the "**Case Professionals**") up to an aggregate amount not to exceed $1,000,000, (inclusive of any fees and expenses of Case Professionals which have actually incurred but are unpaid as of the occurrence of an Event of Default) underlined provided that such fees and expenses are approved by the Bankruptcy Court, or such lesser amount as so approved. The Carve-Out shall exclude any fees and expenses (x) incurred in connection with the assertion or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defenses or other contested matter, the purpose of which is to seek any order, judgment, determination or similar relief (A) invalidating, setting aside, avoiding, or subordinating, in whole or in part, (i) the DIP Obligations, (ii) the Pre-Petition Debt, (iii) the Pre-Petition Lien in the Pre-Petition Collateral, or (iv) the DIP Agent's or DIP Lenders' Liens in the Collateral, or (B) preventing, hindering or delaying, whether directly or indirectly, the DIP Agent's, DIP Lenders' or Pre-Petition Secured Parties' assertions or enforcement of their Liens, security interest or realization upon any Collateral, *provided*, however, that such exclusion does not encompass any investigative work conducted by the Case Professionals prior to bringing any action relating to the foregoing, (y) in using cash collateral of the DIP Agent or the DIP Lenders,

23

selling or otherwise disposing of any other Collateral, or incurring any indebtedness not permitted under the DIP Credit Agreement, without the DIP Agent's express written consent or (z) arising after the conversion of any of the Chapter 11 cases to a case under chapter 7 of the Bankruptcy Code. Except as otherwise provided in this paragraph, nothing contained in this Interim Order shall be deemed a consent by the Pre-Petition Secured Parties, or DIP Secured Parties to any charge, lien, assessment or claim against the Collateral under Section 506(c) of the Bankruptcy Code or otherwise.  Nothing herein shall be construed to obligate the Pre-Petition Secured Parties, or DIP Secured Parties, in any way, to pay the professional fees or U.S. Trustee Fees, or to assure that the Debtor has sufficient funds on hand to pay any professional fees or U.S. Trustee Fees.  So long as no Event of Default shall have occurred and be continuing, subject to Paragraph 9 hereof, the Debtor shall be permitted to pay compensation and reimbursement of expenses allowed and payable under sections 330 and 331 of the Bankruptcy Code, as the same may be due and payable and the same shall not reduce the Carve-Out.

9.    **Payment of Compensation**.  Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtor, any official committee or of any person or shall affect the right of the DIP Lenders, the Pre-Petition Agents to object to the allowance and payment of such fees and expenses or to permit the Debtor to pay any such amounts not set forth in the Budget.

10.    **Section 506(c) Claims**.  Nothing contained in this Interim Order shall be deemed a consent by the Pre-Petition Secured Parties or the DIP Secured Parties to any charge, lien, assessment or claim against the Collateral under Section 506(c) of the Bankruptcy Code or otherwise; provided, however, that during the interim period there shall be no waiver of section 506(c) of the Bankruptcy Code.

11.    **Collateral Rights**.  Unless the DIP Agent has provided its prior written consent or all DIP Obligations and Pre-Petition Debt have been paid in full in cash (or will be paid in full in cash upon entry of an order approving indebtedness described in subparagraph (a) below), all commitments to lend have terminated, all Letters of Credit (as defined in the DIP Credit Agreement) have been secured as required by the DIP Credit Agreement, all indemnity obligations under the DIP Credit Agreement have been cash secured and the Pre-Petition Indemnity Account has been established, there shall not be entered in these proceedings, or in any Successor Case, any order which authorizes any of the following:

(a)    the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Collateral and/or entitled to priority administrative status which is equal or senior to those granted to the DIP Lenders, or the Pre-Petition Secured Parties; or

(b)    relief from stay by any person other than of the DIP Lenders on all or any portion of the Collateral; or

(c)    the Debtor's return of goods constituting Collateral pursuant to section 546(h) of the Bankruptcy Code, except as permitted in the DIP Credit Agreement.

12.    **Proceeds of Subsequent Financing**.  Without limiting the provisions and protections of paragraph 11 above, if at any time prior to the repayment in full of all DIP Obligations and the termination of the DIP Lenders' obligations to make loans and advances under the DIP Facility, including subsequent to the confirmation of any Chapter 11 plan or plans (the "**Plan**") with respect to the Debtor, and the repayment in full of the Pre-Petition Debt, the Debtor's estate, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt pursuant to Bankruptcy Code sections

364(b), 364(c) or 364(d) in violation of the DIP Credit Agreement, then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent in reduction of the DIP Obligations and the Pre-Petition Debt.

13.    **Commitment Termination Date**.  All (i) DIP Obligations of the Debtor to the DIP Lenders shall be immediately due and payable, and (ii) authority to use the proceeds of the DIP Financing Agreements and to use cash collateral shall cease, both on the date that is the earliest to occur of: (i) August __, 2008, (ii) the date on which the maturity of the Obligations is accelerated and the Commitments are irrevocably terminated in accordance with the DIP Credit Agreement, (iii) the failure of the Debtor to obtain a Final Borrowing Order on or before the date which is thirty (30) days after the Effective Date, or (iv) the Consummation Date (the "**Commitment Termination Date**").

14.    **Payment from Proceeds of Collateral**.  All products and proceeds of the Collateral (including, for the avoidance of doubt, proceeds from receivables and sales in the ordinary course of business, insurance proceeds, and proceeds of all dispositions of Collateral, whether or not in the ordinary course) regardless of whether such Collateral came into existence prior to the Petition Date, shall be remitted (i) directly to the Pre-Petition Agent and applied by the Pre-Petition Agent first to the Pre-Petition Revolving Loans and then to the Term Loan until paid in full; and (ii) thereafter, to the DIP Agent for application to the DIP Obligations outstanding pursuant to the DIP Credit Agreement, in the manner set forth therein.

15.    **Disposition of Collateral**.  The Debtor shall not (a) sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral, without the prior written consent of the DIP Lenders (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Lenders or an order of this Court), except for sales of the Debtor's inventory in the

ordinary course of business or except as otherwise provided for in the DIP Credit Agreement and this Interim Order and as approved by the Bankruptcy Court, or (b) assume, reject or assign any Leasehold Interest (as defined in the DIP Credit Agreement) without the prior consultation with the DIP Agent, except as otherwise provided for in the DIP Credit Agreement.

16.    **Events of Default.**  The occurrence of any of the following events shall constitute an Event of Default under this Interim Order:

(a)    Failure by any of the Debtor to comply with any term of this Interim Order.

(b)    The occurrence of the Commitment Termination Date.

Unless and until the Pre-Petition Debt and DIP Obligations are irrevocably repaid in full, all commitments to lend have irrevocably terminated, all Letters of Credit (as defined in the DIP Financing Agreements) have been cash secured as required by the DIP Credit Agreement, and all DIP Obligations which survive termination obligations have been cash secured to the reasonable satisfaction of the Pre-Petition Agents and DIP Agent, and the Pre-Petition Indemnity Account has been established, the protections afforded to Pre-Petition Secured Parties and the DIP Secured Parties pursuant to this Interim Order and under the DIP Credit Agreement, and any actions taken pursuant thereto, shall survive the entry of any order confirming a Plan or converting these cases into a Successor Cases, and the DIP Liens, the DIP Super-Priority Claim, and the Pre-Petition Superpriority Claim shall continue in these proceedings and in any Successor Case, and such Liens, DIP Super-Priority Claim, and the Pre-Petition Superpriority Claim shall maintain their priority as provided by this Interim Order.

**Rights and Remedies Upon Event of Default.**

(a)     Any automatic stay otherwise applicable to the Pre-Petition Secured Parties and DIP Secured Parties is hereby modified so that after the occurrence of any Event of Default and at any time thereafter upon five (5) business days prior notice of such occurrence, in each case given to each of the Debtor, counsel for the Creditors' Committee, if any, and the U.S. Trustee, the Pre-Petition Secured Parties and DIP Secured Parties, shall be entitled to exercise their rights and remedies in accordance with the Pre-Petition Financing Agreement and the DIP Financing Agreements.  Immediately following the giving of notice by the DIP Agent of the occurrence of an Event of Default: (i) the Debtor shall continue to deliver and cause the delivery of the proceeds of Collateral to the DIP Agent as provided in the DIP Credit Agreement and this Interim Order; (ii) the DIP Agent shall continue to apply such proceeds in accordance with the provisions of this Interim Order and of the DIP Credit Agreement; (iii) the Debtor shall have no right to use any of such proceeds, nor any other Cash Collateral other than towards the satisfaction of the Pre-Petition Debt and DIP Obligations and the Carve-Out; and (iv) any obligation otherwise imposed on the DIP Agent or the DIP Lenders to provide any loan or advance to the Debtor pursuant to the DIP Facility shall be suspended.  Following the giving of notice by the DIP Agent of the occurrence of an Event of Default, the Debtor shall be entitled to an emergency hearing before this Court solely for the purpose of contesting whether an Event of Default has occurred.  If the Debtor does not contest the right of the Pre-Petition Secured Parties and DIP Secured Parties, to exercise their remedies based upon whether an Event of Default has occurred within such time period, or if the Debtor does timely contest the occurrence of an Event of Default and the Bankruptcy Court after notice and hearing declines to stay the enforcement thereof, the automatic stay, as to the Pre-Petition Secured Parties and DIP Secured Parties, shall automatically terminate at the end of such notice period.

(b)    If the Pre-Petition Secured Parties or DIP Secured Parties exercise any of their rights and remedies upon the occurrence of an Event of Default under the Pre-Petition Financing Agreement or the DIP Financing Agreements, the DIP Agent may retain one or more agents to sell, lease, or otherwise dispose of the Collateral.  In any exercise of their rights and remedies upon an Event of Default under the DIP Financing Agreements, the DIP Agent and DIP Lenders are authorized to proceed under or pursuant to the DIP Credit Agreement.  Without limiting the foregoing, subject to the terms of the DIP Credit Agreement, in the exercise of the DIP Agent's rights and remedies upon Event of Default, the DIP Agent may by written notice to the Debtor require the Debtor to file a motion seeking to retain one or more agents to sell, lease, or otherwise dispose of the Collateral on terms acceptable to the DIP Agent.  The Debtor shall file such motion within ten (10) days of the DIP Agent's request and shall diligently prosecute such motion.  If the Debtor fails to so file the motion, the DIP Agent may, file and prosecute such a motion in the name of the Debtor.

All proceeds realized from any of the foregoing shall be turned over to the DIP Agent for application to the Carve-Out, the DIP Obligations, and Pre-Petition Debt under, and in accordance with the provisions of, the DIP Financing Agreements, the Pre-Petition Financing Agreements and this Interim Order..

(d)    Modification of Automatic Stay.   The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified pursuant to the terms of the DIP Credit Agreement as necessary to (1) permit the Debtor to grant the Pre-Petition Replacement Liens and the DIP Liens and to incur all liabilities and obligations to the Pre-Petition Secured Parties, the DIP Lender under the DIP Financing Agreements, the DIP Facility and this Interim Order, and

(2) authorize the DIP Lender and the Pre-Petition Secured Parties to retain and apply payments hereunder.

(e)    Nothing included herein shall prejudice, impair, or otherwise affect Pre-Petition Secured Parties' or DIP Secured Parties' rights to seek any other or supplemental relief in respect of the Debtor nor the DIP Agent's or DIP Lenders' rights, as provided in the DIP Credit Agreement, to suspend or terminate the making of loans under the DIP Credit Agreement.

17.    **Proofs of Claim**.  The Pre-Petition Secured Parties and the DIP Lenders will not be required to file proofs of claim in the Case or Successor Case.  The Pre-Petition Secured Parties are hereby authorized and entitled, in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) aggregate proofs of claim in the Case or any Successor Case. Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Pre-Petition Secured Parties.

18.    **Other Rights and Obligations**.

(a)    **Good Faith Under Section 364(e) of the Bankruptcy Code. No Modification or Stay of this Interim Order**. Based on the findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility contemplated by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended or vacated by a subsequent order of this or any other Court, the DIP Lenders are entitled to the protections provided in section 364(e) of the Bankruptcy Code and no such modification, amendment or vacation shall affect the validity and enforceability of any advances made hereunder or lien or priority authorized or created hereby. Notwithstanding any such modification, amendment or vacation, any claim granted to the DIP Lenders hereunder arising prior to the effective date of such modification, amendment or

vacation of any DIP Protections granted to the DIP Lenders shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lenders shall be entitled to all of the rights, remedies, privileges and benefits, including the DIP Protections granted herein, with respect to any such claim. Since the loans made pursuant to the DIP Credit Agreement are made in reliance on this Interim Order, the obligations owed the DIP Lenders prior to the effective date of any stay, modification or vacation of this Interim Order cannot, as a result of any subsequent order in the Case, or in any Successor Case, be subordinated, lose their lien priority or superpriority administrative expense claim status, or be deprived of the benefit of the status of the liens and claims granted to the DIP Lenders under this Interim Order and/or the DIP Financing Agreements.

(b)    **Expenses**. As provided in the Pre-Petition Financing Agreement and DIP Financing Agreements, all costs and expenses of the DIP Secured Parties and Pre-Petition Secured Parties in connection with the DIP Financing Agreements and Pre-Petition Financing Agreement, including, without limitation, reasonable, documented legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, indemnification and reimbursement of fees and expenses, and other out of pocket expenses will be paid by the Debtor, whether or not the transactions contemplated hereby are consummated. Payment of such fees shall not be subject to allowance by the Bankruptcy Court. The DIP Secured Parties and Pre-Petition Secured Parties shall provide to the U.S. Trustee and counsel to any committee(s) appointed in these chapter 11 cases, on a monthly basis, the total amount of professional fees and expenses incurred per calendar month in these chapter 11 cases, upon request, along with the invoices relating to such fees and expenses. Under no circumstances

shall professionals for the DIP Lenders or Pre-Petition Secured Parties be required to comply with the U.S. Trustee fee guidelines.

(c)    **Binding Effect**.   The provisions of this Interim Order shall be binding upon and inure to the benefit of the DIP Lenders and the Pre-Petition Secured Parties, the Debtor and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) whether in the Case, in any Successor Case, or upon dismissal of any such chapter 11 or chapter 7 Case.

(d)    **No Waiver**.   The failure of the Pre-Petition Secured Parties and the DIP Lenders to seek relief or otherwise exercise their rights and remedies under the DIP Financing Agreements, the DIP Facility, the Pre-Petition Financing Agreements or this Interim Order, as applicable, shall not constitute a waiver of any of the Pre-Petition Secured Parties' and the DIP Lenders' rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the Pre-Petition Secured Parties or the DIP Lenders under the Bankruptcy Code or under non-bankruptcy law, including without limitation, the rights of the Pre-Petition Secured Parties and the DIP Lenders to (i) request conversion of the Case to a case under Chapter 7, dismissal of the Case, or the appointment of a trustee in the Case (but only in the event an Event of Default has occurred and is continuing), or (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan or (iii) any of the rights, claims or privileges (whether legal, equitable or otherwise) the DIP Lenders or the Pre-Petition Secured Parties.

(e)    **No Third Party Rights**.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

(f)    **No Marshaling**.  Neither the DIP Lenders nor the Pre-Petition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral,

(g)    **Section 552(b)**.  The DIP Lenders and the Pre-Petition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Lenders or the Pre-Petition Secured Parties with respect to proceeds, product, offspring or profits of any of the Pre-Petition Collateral or the Collateral.

(h)    **Amendment**.  The Debtor and the DIP Agent may amend or waive any provision of the DIP Financing Agreements, provided that such amendment or waiver, in the judgment of the Debtor and the DIP Agent, is either nonprejudicial to the rights of third parties or is not material.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by on behalf of all the Debtor and the DIP Agent (after having obtained the approval of the DIP Lenders as provided in the DIP Financing Agreements) and approved by the Bankruptcy Court.

(i)    **Survival of Interim Order**.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (i) confirming any Plan in the Case, (ii) converting the Case to a case under chapter 7 of the Bankruptcy Code, or (iii) dismissing the Case, (iv) withdrawing of the reference of the Case from this Court, or (v) providing for abstention from handling or retaining of jurisdiction of the

Case in this Court, and the terms and provisions of this Interim Order as well as the DIP

Protections granted pursuant to this Interim Order and the DIP Financing Agreements, shall

continue in full force and effect notwithstanding the entry of such order, and such DIP

Protections shall maintain their priority as provided by this Interim Order until all the obligations

of the Debtor to the DIP Lenders pursuant to the DIP Financing Agreements, and all obligations

of the Debtor to the Pre-Petition Secured Parties under the Pre-Petition Financing Agreement are

indefeasibly paid in full and discharged (such payment being without prejudice to any terms or

provisions contained in the DIP Facility which survive such discharge by their terms).  The DIP

Obligations shall not be discharged by the entry of an order confirming a Plan, the Debtor having

waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.  The Debtor shall

not propose or support any Plan that is not conditioned upon the payment in full in cash of all of

the DIP Obligations and the Pre-Petition Debt, on or prior to the earlier to occur of (i) the

effective date of such Plan and (ii) the Commitment Termination Date.

      (j)    **Inconsistency**.  In the event of any inconsistency between the terms and

conditions of the DIP Financing Agreements and of this Interim Order, the provisions of this

Interim Order shall govern and control.

      (k)    **Enforceability**.  This Interim Order shall constitute findings of fact and

conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully

enforceable *nun pro tunc* to the Petition Date immediately upon execution hereof.

      (l)    **Objections Overruled**.  All objections to the DIP Motion to the extent not

withdrawn or resolved, are hereby overruled.

      (m)    **No Waivers or Modification of Interim Order**.  The Debtor irrevocably

waive any right to seek any modification or extension of this Interim Order without the prior

written consent of the DIP Agent and the Pre-Petition Agent and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent and the Pre-Petition Agent.

      (n)    **Waiver of the Ten (10) Day Stay Under Bankruptcy Rule 6004(h)**. The ten (10) day stay provisions of Bankruptcy Rule 6004(h) are waived and shall not apply to this Interim Order.

      21.    **Final Hearing**.

      (a)    The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for _____, 2008 at the United States Bankruptcy Court for the District of Delaware, Wilmington, Delaware. If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtor and entered by this Court.

      (b)    On or before _____, 2008, the Debtor shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "**Final Hearing Notice**"), together with copies of this Interim Order, the proposed Final Order and the DIP Motion, on: (a) the parties having been given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) counsel for any official committee(s), if any; (d) the Office of the United States Trustee, (e) the Securities and Exchange Commission, (f) the Internal Revenue Service, (g) counsel to the Pre-Petition Agents, (h) the Pre-Petition Agent, (i) counsel to the proposed DIP Agent, and (k) all of the Debtor' current landlords. The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of

the Bankruptcy Court no later than _____, 2008 which objections shall be served so that the same are received on or before such date by: (a) co-counsel for Debtor, Weil Gotshal & Manges, LLP, 767 Fifth Avenue, New York, New York 10153 Attn:Harvey R. Miller, Esq.; and Christopher Marcus, Esquire, Fax (212) 310-8007, and (ii) Womble Carlyle Sandridge & Rice PLLC, 222 Delaware Avenue Suite 1501, Wilimington, Delaware 19801, Attn: Steven K. Kortanek, Esq.; Fax  (302) 661-7728 (b) counsel for DIP Lenders, Riemer & Braunstein, LLP, Three Center Plaza, Boston, Massachusetts 02108, Attn: David S. Berman, Esq., Fax: (617) 880-3456 and (ii) Richards Layton and Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware; 19801 Attn: Mark D. Collins, Esq.; Fax (302) 651-7701; (c) counsel to any Committee; and (e) the U.S. Trustee; and shall be filed with the Clerk of the United States Bankruptcy Court for the District of Delaware , in each case to allow actual receipt of the foregoing no later than [_____ ___, 2008,] at 4:00 p.m. prevailing Eastern time. Notwithstanding the terms of this Interim Order, this Court is not precluded from entering a Final Order containing provisions that are inconsistent with, or contrary to any of the terms in this Interim Order, subject to the protections under Section 364(e) and the rights of the DIP Lenders to terminate the DIP Credit Agreement if such Final Order is not acceptable to them.  In the event this Court modifies any of the provisions of this Interim Order or the Financing Agreements following such further hearing, such modifications shall not affect the rights and priorities of DIP Lenders pursuant to this Interim Order with respect to the Collateral, and any portion of the DIP Obligations which arises or is incurred, advanced or paid prior to such modifications (or otherwise arising prior to such modifications), and this Interim Order shall remain in full force and effect except as specifically amended or modified at such Final Hearing.

(c) **Retention of Jurisdiction**.  The Bankruptcy Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

SO ORDERED by the Bankruptcy Court this _____ day of February, 2008.

_____

The Honorable _____
United States Bankruptcy Judge

1063093.5