Oct 02 2008 9:18AM   HP LASERJET FAX                                                p.2



COLDWELL BANKER COMMERCIAL
HATHAWAY GROUP
2100 Riverdale, Suite 100 Little Rock, AR 72202
PO Box 3730 Little Rock, AR 72203-3730
501.663.5400 or Fax 501.663.5408
www.hathawaygroup.com

# OFFER & ACCEPTANCE

1. **BUYER & SELLER:** Haybar Properties, hereinafter referred to as "Buyer," offers to buy, subject to the terms set forth herein, the below described property from Sharper Image, or its assigns, hereinafter referred to as "Seller."

2. **PROPERTY DESCRIBED AS:** An approximately 102,600 SF building and related improvements on approximately 11.66 acres located at 2112 W. 145th Street, Little Rock, Pulaski County, Arkansas.

3. **PURCHASE PRICE:** The Buyer will pay $900,000 for the property, payable in cash at closing.

4. **SPECIAL CONDITIONS:** Buyer's Offer is conditioned upon satisfaction of the Special Conditions attached hereto on Exhibit A.

5. **EARNEST MONEY:** Within three (3) days of acceptance, Buyer will tender a check for $25,000 to be deposited as earnest money which shall apply to purchase price or closing costs. An additional $25,000 will be deposited as Earnest Money when all conditions are removed by Buyer. Earnest money shall be held in escrow by Lawyers Title. If title requirements are not fulfilled, or if those Special Conditions providing for an earnest money refund are not satisfied, the earnest money deposit shall be refunded to Buyer. If Buyer fails to fulfill his obligations or if, after all conditions have been met, Buyer fails to close this transaction, the earnest money may, at the sole and exclusive option of the Seller, be retained by the Seller as liquidated damages. Alternatively, Seller may return the earnest money and assert all legal or equitable rights which may exist as a result of Buyer's breach of contract.

6. **CONVEYANCE:** Conveyance shall be made to Buyer, or as directed by Buyer, by general warranty deed, except it shall be subject to recorded restrictions and easements, if any, which do not materially affect the property.

7. **TITLE INSURANCE:** Within fifteen (15) days of acceptance, Seller shall furnish to Buyer a commitment for an American Land Title Association (ALTA) owner's title insurance policy in the amount of the purchase price issued by a company authorized to insure title to real property in the State of Arkansas and which company is reasonably acceptable to Buyer. Where the title commitment shows special exceptions to title other than those standard exceptions contained in the ALTA commitment form, and where such special exceptions relate to restrictions, conditions, defects or other matters which would interfere with Buyer's use or adversely affect the value of the premises, then within ten (10) days of delivery of the title commitment, Buyer shall deliver written notice thereof to Seller. Such notice shall state specifically those exceptions to which Buyer objects. All objections not specifically enumerated within such a timely delivered notice shall be deemed to be waived by Buyer.

   Within ten (10) days of Buyer's delivery of notice of objections to Seller, Seller may cure such objections or have the exceptions waived or removed by the title company issuing the commitment. If, within such ten (10) day period, Seller fails to cure and/or have waived such objections and exceptions, or within that period, Seller delivers written notice to Buyer that it will not so cure, then, within three (3) days from delivery of such notice from Seller or the end of the period within which Seller may cure (whichever is applicable), Buyer shall have the option to:

   a) Terminate this agreement by delivering written notice thereof to Seller, in which event all sums paid or deposited by Buyer shall be returned to Buyer; or
   b) Purchase the premises subject to such objections and exceptions with no reduction in the purchase price; or
   c) Agree to extend the closing date for thirty (30) days, to give Seller additional time to cure such objections.

   If Buyer fails to deliver notice of termination or grant an extension of the closing date within that period, the objections shall be deemed to be waived and this condition shall be satisfied.

   Seller shall furnish the committed owner's title insurance policy as soon as practicable after closing, and shall pay all expenses related to the owner's title insurance policy.

8. **PRORATIONS:** Taxes and special assessments due on or before closing shall be paid by Seller. Any deposits on rental property are to be transferred to Buyer at closing. Insurance, current general taxes and special assessments, rental payments, utilities, and any interest on assumed loans shall be prorated at closing unless otherwise specified herein.

9. **CLOSING:** Closing shall occur at such time as mutually agreed by the parties, provided that the date shall be no later than ten (10) days after removal of all conditions, unless such requirement is waived in writing by both parties and a new date substituted therefor. Unless otherwise agreed by Buyer and Seller, transaction costs will be paid by the party indicated below:

   Seller:
   - Title examination or search fees,
   - Premium for owner's title insurance policy,
   - IRS notification form,
   - Preparation of conveyance documents,
   - One-half of escrow fees,
   - One-half of documentary stamps,
   - Other charges as customarily paid by Seller.

   Buyer:
   - Premium for mortgagee's title insurance policy,
   - Recording fees,
   - Preparation of loan documents,
   - One-half of escrow fees,
   - One-half of documentary stamps,
   - Other charges customarily paid by Buyer.

10. **POSSESSION:** Possession shall be delivered to Buyer upon the closing date.

BH 10/6/08

Oct 02 2008 9:18AM    HP LASERJET FAX                                        p.3

11. ATTACHED FIXTURES AND EQUIPMENT: Unless specifically excluded herein, all attached fixtures and equipment, if any, are included in the purchase price.
12. INSPECTIONS AND REPAIRS: Buyer certifies that Buyer has inspected or will inspect the property and is not relying upon any warranties, representations or statements of any agent or Seller as to age or condition of improvements, other than those specified herein.
13. RISK OF LOSS: If prior to closing of this transaction the improvements on the property shall be destroyed or materially damaged by fire or other casualty, this contract shall, at the option of the Buyer, be null and void. If Buyer shall elect, in the event of such loss, that the contract shall be performed, he shall be entitled to the proceeds of insurance applicable to the loss for use in repairing said loss.
14. MISCELLANEOUS:
    a) This Offer and Acceptance shall be governed by the laws of the State of Arkansas.
    b) This Offer and Acceptance, including all exhibits, contains the complete agreement between the parties and cannot be varied except by written agreement by the parties. The parties agree that there are no oral agreements, understandings, representations or warranties which are not expressly set forth herein.
    c) Any portion of this Offer and Acceptance not otherwise consummated at closing will survive the closing of this transaction as a continuing agreement by and between the parties.
    d) This Offer and Acceptance shall inure to the benefit of and bind the parties hereto and their respective heirs, representatives, successors, and assigns.
    e) Time is of the essence with respect to this Offer and Acceptance.
15. ACCEPTANCE: The term "acceptance" as used herein shall mean the later of the two dates on which this Offer and Acceptance is signed by Seller or Buyer, as indicated by their signatures below, which later date shall be the date of final execution and agreement by the parties hereto. If any date or deadline provided for herein falls on Saturday, Sunday, or a holiday, the applicable date shall be the next business day.
16. AGENCY: Buyer and Seller acknowledge that the Listing Agent Firm is employed by the Seller and the Selling Agent Firm is employed by the Buyer. All licensed personnel associated with the Listing Agent Firm are employed by, represent, and are responsible to the Seller. All licensed personnel associated with the Selling Agent Firm are employed by, represent, and are responsible to the Buyer. Buyer acknowledges the Selling Agent Firm disclosed that the Listing Agent Firm represents the Seller. Seller acknowledges the Listing Agent Firm disclosed that the Selling Agent Firm represents the Buyer.
17. EXPIRATION OF OFFER: This offer shall expire unless accepted in writing by Seller before 3:00 p.m. on October 3, 2008.

SELLING AGENT FIRM:  
Coldwell Banker Commercial Hathaway Group  
_____  
Stuart S. Mackay, Agent  

_____  
Supervising Broker  

BUYER:  
Haybar Properties  
_____  10/2/08  
Bryan Hosto                          Date  

The above offer is accepted _____, 2008 at _____ AM/PM. It is the Buyer's and the Selling Agent Firm's understanding that the Seller agrees to pay Listing Agent Fee a fee, and said fee is to be equal to 5% of the purchase price, for professional services rendered in securing said offer. Fee paid to Listing Agent Firm to be split equally between Selling Agent Firm and Listing Agent Firm.

LISTING AGENT FIRM:  
DJM Realty  
_____  
Agent  

_____  
Supervising Broker  

SELLER:  
Sharper Image, or its assigns  
_____  10/3/08  
                                     Date  
KEVIN PALMER  VICE PRESIDENT FINAN  
Print Name and Title  + CONTROLLER  

BH 10/6/08

2

## EXHIBIT A
## SPECIAL CONDITIONS

1. **SURVEY.** Within twenty-one (21) days after acceptance, Seller shall provide to Buyer, at Seller's expense, a current survey of the property, prepared by a Registered Land Surveyor. The survey shall show:
   a. the boundaries of the property;
   b. the legal description of the property;
   c. all existing easements and rights-of-way (setting forth the book and page number of the recorded instruments creating the same), alleys, streets, and roads;
   d. all existing improvements located on the property, including buildings, fences, parking lots, sidewalks, power lines, etc.
   e. any encroachments from or over adjacent properties;
   f. the area of the property, expressed as a number of square feet;
   g. the surveyor's certification;
   h. that it is prepared for the benefit of Buyer, Seller, and The Hathaway Group, Inc.
   i. an accurate metes and bounds description;
   j. the area (expressed as a number of square feet) and perimeter of that portion of the property within the official 100 year floodplain, as established by the public authorities having jurisdiction thereover;

2. **ENVIRONMENTAL.** Seller hereby warrants and represents to Buyer that to the best of Seller's knowledge:
   a. the property is not the subject of any judicial or administrative notice or action relating to hazardous waste or environmental contamination;
   b. Seller has received no notice of any claim or violation of any law or regulation having to do with environmental protection;
   c. no hazardous or toxic substances have been stored, processed, or disposed of on the property during the period that Seller has owned the property;
   d. no underground storage tanks are located on the property.

   Within fifteen (15) days of acceptance Seller will also provide Buyer with copies of all information in Seller's possession related to environmental condition of the property.

3. **FEASIBILITY.** Buyer shall have thirty (30) days after delivery of survey to conduct a feasibility study and satisfy itself that the property, in Buyer's sole opinion, is suitable for Buyer's intended use. If Buyer fails to remove this condition in writing within thirty (30) days after delivery of survey, OR if Buyer provides earlier written notice to Seller that Buyer will not remove this condition, this Offer and Acceptance shall be void and the earnest money shall be promptly refunded to Buyer, and Buyer and Seller shall have no further obligation to each other.

4. **INSPECTION.** Buyer shall have thirty (30) days after delivery of survey to inspect the property (including but not limited to the following items: roof, foundation, parking lots, heating and air conditioning systems, plumbing systems, and electrical systems) to satisfy itself that the property is in acceptable condition. If Buyer fails to remove this condition in writing within thirty (30) days after delivery of survey, OR if Buyer provides earlier written notice to Seller that Buyer will not remove this condition, this Offer and Acceptance shall be void and the earnest money shall be promptly refunded to Buyer, and Buyer and Seller shall have no further obligation to each other.

5. **TERMITE.** No later than twenty (20) before closing, Seller shall furnish to Buyer, at Seller's cost, a current certificate from a licensed termite control company establishing that the property is free of termite infestation and/or damage.

6. **TAX DEFERRED EXCHANGE.** Buyer and Seller agree to cooperate with each other if either of them desires to effect a tax deferred exchange of "like kind" property in accordance with Section 1031 of the Internal Revenue Code of 1986, as amended; provided, however, that neither party shall under any circumstances be required to take or hold title to any property designated by the other as exchange property, or any property other than the property, and further provided that neither party shall incur any additional expense as a result of such "like kind" exchange election by the other party.

7. **UTILITIES.** Seller warrants that all utilities, including gas, electric, water and sewer are presently installed to a boundary of the property and will provide Buyer, within fifteen (15) days of acceptance, the names of all providers of utilities and to the property.

8. **EQUIPMENT AND FURNISHINGS.** Buyer shall take possession of the real property and all personal property currently on site with the exception of the palleted "Ionic Breeze Machines" sitting closet to the dock doors. Buyer and Seller acknowledge and agree that this conveyance shall include, but not be limited to a forklift, remaining palleted "Ionic Breeze Machines", office furniture, pallets, desks, partitions, racks, wiring, phones, and miscellaneous equipment.

9. **REPAIR OF PROPERTY.** Seller shall repair the damaged entry door and insure the property is secured until close.

BH 10/1/08
KP 10/3/08

3

**Exhibit B**

TRACT 1

A tract of land located in the NE 1/4 SW 1/4 Section 24, Township 1 South, Range 12 West, Pulaski County, Arkansas, more particularly described as: Stating at an iron pin marking the intersection of the North right of way line of East 145 Street and the West right of way line of Dineen Drive; thence South 89 degrees 44 minutes 40 seconds East along said North right of way line, 22.75 feet; thence Southeasterly and continuing along said North right of way line, being the arc of a 2,915 foot radius curve to the right having an arc distance of 559.07 feet; thence South 78 degrees 45 minutes 20 seconds East and continuing along said North right of way line 2724.44 feet to the point of beginning of the tract of land described herein; thence North 11 degrees 14 minutes 40 seconds East and perpendicular to said North right of way line, 522.72 feet to a point; thence South 78 degrees 45 minutes 20 seconds East and parallel with said North right of way line, 555.56 feet to a point; thence South 11 degrees 14 minutes 40 seconds West and perpendicular to said North right of way line 522.72 feet to a point on said North right of way line; thence North 78 degrees 45 minutes 20 seconds West along said North right of way 555.56 feet to the point of beginning.

TRACT 2

A tract of land located in the NE1/4 SW1/4 and SE1/4 NW1/4, Section 24, Township 1 South, Range 12 West, Pulaski County, Arkansas, more particularly described as Starting at an iron pin marking the intersection of the North right of way line of East 145th Street and the West right of way line of Dineen Drive; thence S 89°44'40" E along the said North right of way line, 22.75 feet; thence Southeasterly and continuing along said North right way of line, being the arc of a 2915 radius curve to the right having an arc distance of 559.07 feet; thence S 78°45'20" E and continuing along said North right of way line, 2724.44 feet; thence N 11°14'40" E and perpendicular to said north right of way line 522.72 feet to the point of beginning; thence continue N11°14'40" W 392.04 feet; thence S 78°45'20" E, 555.56 feet; thence S 11°14'40" W, 392.04 feet; thence N 78°45'20" W, 555.56 feet to the point of beginning.

## EXHIBIT C

### Amendments and Additions to the Agreement
### and Exhibit A "Special Conditions"

**The following amendments and/or additions are made to the Agreement:**

Par. 1.   The name of the Seller is "TSIC, Inc. f/k/a Sharper Image Corporation, a Delaware Corporation."

Par. 2.   At the end of this paragraph, the words: "and more particularly described in Exhibit B attached hereto and the fixtures and furnishings as further set forth in paragraph 8 of Exhibit A attached hereto" shall be added.

Par. 5.   Paragraph 5 is hereby amended in its entirety to read as follows:

"Within three (3) days of acceptance, Buyer will tender a check for $50,000 to be deposited as earnest money, which shall apply to purchase price or closing costs (the "Earnest Money"). An additional $10,000 will be deposited as Earnest Money when all conditions are removed by Buyer. Earnest Money shall be held in escrow by Weil, Gotshal & Manges, LLP, as attorneys to the Seller, and will act as escrow agent for the Earnest Money (the "Escrow Agent"). The total Earnest Money deposited after all conditions are removed will be $60,000. If title requirements are not fulfilled, or if those Special Conditions providing for an earnest money refund are not satisfied, the Earnest Money shall be refunded to Buyer. If Buyer fails to fulfill his obligations or if, after all conditions have been met, Buyer fails to close this transaction, the Earnest Money may, at the sole and exclusive option of the Seller, be retained by the Sellter as liquidated damages. Alternatively, Seller may return the earnest money and assert all legal or equitable rights which may exist as a result of Buyer's breach of contract.

Escrow Agent shall hold and dispose of the Earnest Money in accordance with the terms of this Agreement. Escrow Agent shall incur no liability in connection with the safekeeping or disposition of the Earnest Money for any reason. Escrow Agent shall not be responsible for any interest on the earnest money except as is actually earned. Escrow Agent shall execute this Agreement solely for the purpose of being bound by the provisions of this paragraph 5 hereof."

Par. 6.   The words at the end of the sentence "recorded restrictions and easements, if any, which do not materially affect the property" are hereby replaced with the following: "the Permitted Exceptions, which shall be defined as follows: (a) the standard exceptions contained in the ALTA title commitment form, (b) those matters that either are not objected to in writing within the time periods provided in paragraph 7 below, or if objected to in writing by Buyer, are those which Seller has elected not to remove or cure, or has been unable to remove or cure, and subject to which Buyer has elected or is deemed to have elected to accept the conveyance of the property, (c) the lien of all ad valorem real estate taxes and assessments not yet due and payable as of the date of the closing, subject to adjustment as provided herein, and (d) local, state and federal laws and governmental regulations, including but not limited to, building and zoning laws, ordinances and regulations, now or hereafter in effect relating to the property.

Conveyance of the fixtures and furnishings shall be made to Buyer by bill of sale."

Par. 7. In the second paragraph of section 7, the number ten (10) is hereby changed to the number twelve (12). In subsection (a), the words "all sums paid or deposited by Buyer" are hereby deleted in their entirety and replaced with the words "the earnest money deposit." In subsection (c), the following words are hereby added to the end of the final sentence of such section: "as Seller is willing or able to cure."

Par. 13. The language in the Agreement is deleted and replaced in its entirety with the following:

13.1 <u>Minor Damage or Condemnation</u>. In the event of loss or damage to, or condemnation of, the property or any portion thereof which is not "Major" (as hereinafter defined), this Agreement shall remain in full force and effect provided that Seller shall, at Seller's option, either (a) perform any necessary repairs, or (b) assign to Buyer, without representation, warranty or recourse to Seller, all of Seller's right, title and interest in and to any claims and proceeds Seller may have with respect to any casualty insurance policies or condemnation awards relating to the premises in question, after deduction of Seller's expenses of collection and amounts expended by Seller in Seller's reasonable discretion to prevent further damage to the property or to alleviate unsafe conditions at the property caused by casualty or condemnation. In the event that Seller elects to perform repairs upon the property, Seller shall use reasonable efforts to complete such repairs promptly and the date of closing shall be extended a reasonable time in order to allow for the completion of such repairs. If Seller elects to assign a casualty claim to Buyer, the Purchase Price shall be reduced by an amount equal to the lesser of the deductible amount under Seller's insurance policy or the cost of such repairs as determined in accordance with hereof. Upon Closing, full risk of loss with respect to the Property shall pass to Purchaser.

13.2 <u>Major Damage</u>. In the event of a "Major" loss or damage to, or condemnation of, the property or any portion thereof, either Seller or Buyer may terminate this Agreement by written notice to the other party, in which event the earnest money deposit shall be returned to Buyer. If neither Seller nor Buyer elects to terminate this Agreement within ten (10) days after Seller sends Buyer written notice of the occurrence of such Major loss, damage or condemnation (which notice shall state the cost of repair or restoration thereof as opined by an architect in accordance with Paragraph 13.3 hereof), then Seller and Buyer shall be deemed to have elected to proceed with closing, in which event Seller shall, at Seller's option, either (a) perform any necessary repairs, or (b) assign to Buyer, without representation, warranty or recourse to Seller, all of Seller's right, title and interest in and to any claims and proceeds Seller may have with respect to any casualty insurance policies or condemnation awards relating to the premises in question, after deduction of Seller's expenses of collection and amounts expended by Seller in Seller's reasonable discretion to prevent further damage to the property or to alleviate unsafe conditions at the property caused by casualty or condemnation. In the event that Seller elects to perform repairs upon the property, Seller shall use reasonable efforts to complete such repairs promptly and the date of closing shall be extended a reasonable time in order to allow for the completion of such repairs. If Seller elects to assign a casualty claim to Buyer, the Purchase Price shall be reduced by an amount equal to the lesser of the deductible amount under Seller's

insurance policy or the cost of such repairs as determined in accordance with Paragraph 13.3 hereof. Upon closing, full risk of loss with respect to the property shall pass to Buyer.

13.3   **Definition of "Major" Loss or Damage.**   For purposes of Paragraphs 13.1 and 13.2, "Major" loss, damage or condemnation refers to the following: (a) loss or damage to the property hereof such that the cost of repairing or restoring the premises in question to substantially the same condition which existed prior to the event of damage would be, in the opinion of an architect selected by Seller and reasonably approved by Buyer, equal to or greater than $100,000, and (b) any loss due to a condemnation which permanently and materially impairs the current use of the property. If Buyer does not give written notice to Seller of Buyer's reasons for disapproving an architect within five (5) business days after receipt of notice of the proposed architect, Buyer shall be deemed to have approved the architect selected by Seller.

**The following paragraphs are hereby added to the Agreement:**

18.   NOTICES   Any notice pursuant to this Agreement shall be given in writing by (a) personal delivery, (b) reputable overnight delivery service with proof of delivery, (c) United States Mail, postage prepaid, registered or certified mail, return receipt requested, or (d) legible facsimile transmission, sent to the intended addressee at the address set forth below, or to such other address or to the attention of such other person as the addressee shall have designated by written notice sent in accordance herewith, and shall be deemed to have been given upon receipt or refusal to accept delivery, or, in the case of facsimile transmission, as of the date of the facsimile transmission provided that an original of such facsimile is also sent to the intended addressee by means described in clauses (a), (b) or (c) above. Unless changed in accordance with the preceding sentence, the addresses for notices given pursuant to this Agreement shall be as follows:

| | |
|---|---|
| If to Seller: | Kevin Palmer, Vice President and Controller<br>TSIC, Inc. f/k/a Sharper Image Corporation<br>1255 Treat Blvd, Suite 300<br>Walnut Creek, California 94597<br>Telephone:   (415) 999-8317<br>Email:   kpalmer@tsicbusiness.com |
| with a copy to: | Harvey R. Miller<br>Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Telephone:   (212) 310-8000<br>Telecopy:   (212) 310-8007 |
| If to Buyer: | Bryan Hosto<br>Haybar Properties<br>P. O. Box 3395<br>Little Rock, AR 72203<br>(501) 320-0201 |

BH 10/6/08

KP 10/13/08

with a copy to:        Stuart S. Mackey, CCIM
                       Coldwell Banker Commercial
                       Hathaway Group
                       2100 Riverdale, Suite 100
                       Little Rock, AR 72202
                       (501) 663-5400
                       (501) 663-5408
                       smackey@hathawaygroup.com

19. **AUTHORITY OF BUYER.** Buyer represents and warrants that it has the full right and authority to enter into this Agreement and to consummate the transaction contemplated by this Agreement. The person signing this Agreement is authorized to do so.

20. **BROKERAGE COMMISSIONS.** With respect to the transaction contemplated by this Agreement, Seller represents that its sole broker is DJM Realty, the Listing Agent Firm, and Buyer represents that its sole broker is Coldwell Banker Commercial Hathaway Group, the Selling Agent Firm. Each party hereto agrees that if any person or entity, other than the Listing Agent Firm or the Selling Agent Firm, makes a claim for brokerage commissions or finder's fees related to the sale of the property by Seller to Buyer, and such claim is made by, through or on account of any acts or alleged acts of said party or its representatives, said party will protect, indemnify, defend and hold the other party free and harmless from and against any and all loss, liability, cost, damage and expense (including reasonable attorneys' fees) in connection therewith. The provisions of this paragraph shall survive closing or any termination of this Agreement.

21. **ASSIGNMENT.** Buyer may not assign its rights under this Agreement prior to closing without first obtaining Seller's written approval, which approval may be given or withheld in Seller's sole discretion, and any such attempted assignment without Seller's prior written approval shall be null and void. In the event Buyer intends to assign its rights hereunder, (a) Buyer shall send Seller written notice of its request at least ten (10) business days prior to Closing, which request shall include the legal name and structure of the proposed assignee, as well as any other information that Seller may reasonably request, (b) Buyer and the proposed assignee shall execute an assignment and assumption of this Agreement in form and substance satisfactory to Seller, subject to the approval of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and (c) in no event shall any assignment of this Agreement release or discharge Buyer from any liability or obligation hereunder. Notwithstanding the foregoing, under no circumstances shall Buyer have the right to assign this Agreement to any person or entity owned or controlled by an employee benefit plan if Seller's sale of the property to such person or entity would, in the reasonable opinion of Seller's ERISA advisor, create or otherwise cause a "prohibited transaction" under ERISA. Any transfer, directly or indirectly, of any stock, partnership interest or other ownership interest in Purchaser shall constitute an assignment of this Agreement. The provisions of this Paragraph 21 shall survive the closing or any termination of this Agreement.

22. **BANKRUPTCY COURT APPROVAL OF SALE.** The sale of the Property is subject to and contingent upon the entry of one or more orders of the Bankruptcy Court

authorizing the sale of the Property to Buyer on the terms and conditions set forth in this Agreement and which order has not been stayed. Seller shall file a motion with the Bankruptcy Court seeking approval of the sale (a "Sale Motion") within three (3) business days of acceptance. Seller will use its best faith efforts to file the motion with sufficient time to allow for the hearing on the Sale Motion to occur on October 22, 2008. In the event such date is unavailable because of an adjournment by the Bankruptcy Court or the Bankruptcy Court's denial of a motion to shorten notice with respect to the Sale Motion, Seller will request a hearing on the Sale Motion to be set as soon as possible thereafter.

**The following amendments are made to Exhibit A of the Agreement:**

Par. 3 and 4.   Buyer shall have until November 14, 2008 to remove these conditions.

Par. 8.   Equipment and Furnishings.   Seller may, at its sole option, convey abandoned property which could include the forklift and/or remaining palleted "Ionic Breeze" Machines, subject to an order of the Bankruptcy Court approving same.

**The following paragraphs are hereby added to Exhibit A of the Agreement:**

Par. 10   Disclosure:   The Buyer holds an active Arkansas real estate license.

| | | | | |
|---|---|---|---|---|
| **H B** **P L** | HOSTO BUCHAN PRATER & LAWRENCE A PROFESSIONAL LIMITED LIABILITY COMPANY | Bryan E. Hosto +* Charles J. Buchan +☐ Mark A. Sexton+* Paul A. Prater + Joel D. Boyd + Arnold N. Goodman + Esther A. Grossman ☐ Melvin Thathiah ☐ | Jennifer P. Sanders +☐ Richard L. Lawrence +★ Suzanne L. Tipton + R. Dallas Elms, Jr. +☐ Charles Soffar ☐ Sam P. Strange, Jr. + Jason Rose ☐ Kanika Walker ☐ | Jennifer Janis+  +Licensed in Arkansas *Licensed in Tennessee ☐Licensed in Texas ★Licensed in Missouri |

*WEB ADDRESS: WWW.HOSTO.COM*

# FACSIMILE COVER SHEET

**Date:**           10/6/08

**To:**             **Stuart Mackey**

**Fax Number:**     **663-5408**

**From:**           **Roxanne Proffer for Bryan Hosto**

**Re:**             **2112 West 145th Street**

**Number of Pages, Including Cover Sheet:**     **10**

If you have any problems receiving this transmission, please contact me at (501) 320-0229 or via e-mail to rproffer@hosto.com. Thank you!

Texas Office
8117 Preston Rd., Ste 300 West
Dallas, Texas 75225
Phone (501) 374-1300

Main Office
P.O. Box 3397
Little Rock, Arkansas 72203-3397
Facsimile (501) 482-0229

Tennessee Office
4525 Harding Rd., Ste 218
Nashville, TN 37205
E-mail bhosto@hosto.com