**ASSET PURCHASE AND SALE AGREEMENT**

THIS ASSET PURCHASE AND SALE AGREEMENT ("Agreement") is made and entered into this __ day of January, 2011, by and between PANTOLL PARTNERS, LLC, a California limited liability company ("Purchaser"), and TSIC, INC. f/k/a SHARPER IMAGE CORPORATION, a Delaware corporation ("TSIC" or "Seller").  Purchaser and Seller are sometimes collectively referred to in this Agreement as "Parties" or individually as "Party."

**RECITALS**

A.  On February 19, 2008 (the "Commencement Date"), TSIC, Inc. f/k/a SHARPER IMAGE CORPORATION filed for bankruptcy relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for Delaware ("Bankruptcy Court").

B.  Since the Commencement Date, TSIC has discontinued its retail business and, essentially, liquidated its major physical assets pursuant to authority granted by the Bankruptcy Court.  TSIC is now in the process of winding down the administration of the estate.

C.  On February 20, 2009, a Second Amended Class Action Complaint entitled In re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation (Case No. 1:05-md-01720-JG-JO) ("Litigation") was filed in the United States District Court for the Eastern District of New York ("District Court").  If the plaintiffs in the Litigation are successful in certifying a class and either prevail in the Litigation or such Litigation results in a settlement ("Settlement Event"), TSIC may be included in the class and, accordingly, may be entitled to a monetary recovery ("Asset").  Whether such recovery will occur is unknown by Seller and Purchaser at the time of this Agreement.  If no Settlement Event takes place, the Asset will have no value.

D.  Purchaser is not affiliated with any counsel involved in the Litigation or the District Court.

E.  Following a Settlement Event, it is anticipated that the fixed aggregate amount of the recovery will be allocated *pro rata* among claimants to the settlement proceeds, in a manner to be described in documents approved by the District Court.

F.  All terms used herein and not defined herein shall have the meanings given such terms in the Litigation.

G.  The Parties intend to transfer from Seller to Purchaser any and all of Seller's right, title and interest in and or associated with, or connected in any manner to, any Asset that may arise from the Litigation.

H.  Purchaser is in the business of purchasing claims from entities entitled to recover funds from both existing class action lawsuit settlements and from pending class action litigation that may or may not result in a recovery.

US_ACTIVE:\43580799\04\73656.0003

I.     Purchaser desires to purchase the Asset from Seller and Seller desires to sell the Asset to Purchaser as provided for in this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants, agreements, representations and warranties contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

**SECTION 1 – RECITALS INCORPORATED IN AGREEMENT.**

1.1    The above recitals are hereby incorporated herein by reference.

**SECTION 2 – TERMS OF PURCHASE AND SALE**

2.1.    <u>Sale and Purchase of Asset</u>.  On the terms and subject to the conditions and other provisions set forth in this Agreement, Purchaser agrees to purchase all right, title and interest in the Asset from Seller, and Seller agrees to sell, transfer and assign all right, title and interest in the Asset to Purchaser subject to approval of the Bankruptcy Court, for the sum of $57,500.00 ("<u>Purchase Price</u>").  Following approval by the Bankruptcy Court, the sale shall be final.

2.2.    <u>Payment of Purchase Price</u>.  In consideration for the sale of the Asset by Seller to Purchaser, in accordance with this Agreement, Purchaser will wire transfer to Seller the Purchase Price using wire instructions to be provided by Seller, within 10 business days of (i) full execution of this Agreement and (ii) approval of the sale subject to the terms of this Agreement by the Bankruptcy Court.

2.3.    <u>Purchase in Good Faith</u>.  Seller acknowledges the Purchaser's requirement that it be determined to be a "Purchaser in Good Faith" pursuant to 11 U.S.C. §363(m) in the Bankruptcy Court order approving this Agreement.

2.4.    <u>Cooperation of Seller</u>.  Seller understands and acknowledges that in order for Purchaser to verify and/or collect the Asset, Purchaser may require Seller's reasonable assistance in the event that a claims administrator appointed in the Litigation (the "<u>CA</u>"), Lead Counsel or the District Court audits and/or withholds payment on the Asset pending verification of data within Seller's reasonable possession and/or control.

2.5.    <u>Actions by Purchaser</u>.  Purchaser expressly reserves the right to take any steps it deems reasonable and necessary in order to maximize Purchaser's recovery in respect of the Asset.

2.6.    <u>Ancillary Agreement</u>.  In addition to this Agreement, the Parties will enter into the following additional agreement: Notice of Assignment.

2.7. <u>No Assumption of Obligations or Liabilities</u>.  Upon the later of (i) full execution of this Agreement and (ii) approval of the sale subject to the terms of this Agreement by the Bankruptcy Court, Purchaser shall assume all obligations and liabilities relating to the Asset but shall not assume or in any way become liable for any other obligation or liability of the Seller independent of the Asset.

**SECTION 3 - REPRESENTATIONS AND WARRANTIES OF SELLER**

Seller represents and warrants to Purchaser as follows:

3.1. <u>Organization</u>.  Seller is a corporation duly organized, validly existing and in good standing under the laws of the state of its organization.

3.2. <u>Authorization</u>.  Seller, subject to Bankruptcy Court approval, has the requisite power and authority to own the Asset as currently owned, to execute and deliver this Agreement or any Ancillary Agreement, and to perform the transactions contemplated hereby or thereby, and that such performance does not constitute a violation of Seller's certificate of incorporation, by-laws or any other valid instrument to which Seller is a party or by which Seller may be bound.

3.3. <u>Due Execution; Validly Binding Agreement</u>.  This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of the Seller, enforceable against it in accordance with its terms as approved by the Bankruptcy Court.

3.4. <u>No Litigation</u>.  There is no known suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry, pending or threatened against Seller or concerning the Asset that could prevent or prohibit Seller from selling the Asset or from otherwise complying in full with the provisions of this Agreement except for the requirement of Bankruptcy Court approval for the sale of the Asset.  Subject to Bankruptcy Court approval, transfer of the Asset pursuant to this Agreement will not breach, violate or otherwise contravene any applicable law, statute, regulation or contractual term.

3.5. <u>Title to Asset; No Liens</u>.  Seller has good, valid and marketable title to the Asset and can sell the Asset is free and clear of any mortgage, pledge, lien, security interest, claim or encumbrance pursuant to section 363(f) of the Bankruptcy Code.  Seller has not transferred the Asset or any interest therein except to Purchaser hereunder.

3.6. <u>Information Provided to Purchaser</u>.  All information provided to Purchaser by Seller in connection with the sale of the Asset, including but not limited to, information on dates on which the Seller began accepting Visa and/or MasterCard credit card and/or debit transactions, financial information about the Seller's business (including total United States sales) and any other representations actually or potentially concerning the asset is true, correct and complete.  Seller has made the following Representations or Warranties to Purchaser:

  i. Seller has not had any communications with the District Court, Lead Counsel or any other entity affiliated with the Litigation regarding the Litigation.

  ii. Seller warrants that, should a Settlement Event occur, if asked by the District Court, Lead Counsel, the CA or any other entity affiliated with the Litigation, Seller will state that (1) Seller never intended to opt-out of the Litigation; (2) Seller never gave any entity any indication of an intent to opt-out of the Litigation; and (3) Seller never authorized any entity to opt-out of the Litigation on Seller's behalf.

  iii. Seller warrants that if requested by Purchaser and if a Settlement Event should occur, it will provide an affidavit stating that (1) Seller never intended to opt-out of the Settlement Event; (2) Seller never gave any entity any indication of an intent to opt-out of the Settlement Event; and (3) Seller never authorized any entity to opt-out of the Settlement Event on Seller's behalf.

  iv. Seller warrants that it will never take any position inconsistent with the representations and warranties contained herein.

3.7. <u>Independent Investigation</u>.  Aside from Representations or Warranties contained herein, Seller acknowledges that it has conducted its own independent evaluation of the transactions contemplated under this Agreement.  Seller further acknowledges that it has had an opportunity to conduct its own independent investigation regarding the Asset.  Seller has had an opportunity to review the documents and information available through publicly available sources of information.

3.8. <u>No Reliance</u>.  Aside from Representations or Warranties contained herein, Seller has conducted an independent evaluation of the reasonableness of the Purchase Price and has decided to enter into this Agreement and undertake the transactions contemplated hereunder solely in reliance on its own evaluation of the Purchase Price.  With the exception of any representations and warranties set forth in Section 4 of this Agreement, Seller is not relying on (i) any information provided to Seller or written or oral representations, whether express or implied, by Purchaser or its respective shareholders, officers, directors, employees, agents or affiliates or (ii) any information provided to Seller by Purchaser or its respective shareholders, officers, directors, employees, agents or affiliates in assessing the reasonableness of the Purchase Price.  Seller acknowledges that Purchaser expressly disclaims and has not made any warranties, guarantees, promises, or representations of any kind whatsoever regarding the value of the Asset and the anticipated recovery and/or timing of recovery on the Asset.

3.9. <u>Information</u>.  Seller acknowledges that, because a Settlement Event had not taken place prior to the payment of the Purchase Price, the value of the Asset and the final recovery on the Asset may not be determined with certainty by Seller or Purchaser as of the time of execution of this Agreement.  Seller further acknowledges that Purchaser may possess

material information not known to Seller and Seller agrees that Purchaser shall have no liability with respect to the non-disclosure of any such information.

3.10. <u>Expectation of Return</u>.  Seller acknowledges that Purchaser's sole intention and expectation in entering into this Agreement is to earn a positive financial return on the Asset.  As such, Seller understands that Purchaser's recovery on the Asset may exceed the Purchase Price.

3.12 <u>Own Advisors</u>.  Seller acknowledges that it has had an opportunity to consult with an attorney and/or other relevant professional advisors prior to the execution of this Agreement. Seller acknowledges that Purchaser has advised it that it should seek such counsel.

3.14 <u>No Fiduciary or Confidential Relationship</u>.  Seller acknowledges that Seller and Purchaser are not in a fiduciary, confidential, agency or otherwise special relationship, including one of trust, confidence or privity, and that Seller and Purchaser are each acting for its own self interest.

3.15 <u>Claim Form and Amounts</u>.  Seller is a potential class member should a class be certified in the Litigation and accepted Visa and or MasterCard transactions.

**SECTION 4 – REPRESENTATIONS AND WARRANTIES OF PURCHASER**

Purchaser represents and warrants to Seller as follows:

4.1. <u>Organization</u>.  Purchaser is a limited liability company, validly existing and in good standing under the laws of the State of Delaware.

4.2. <u>Authorization</u>.   Purchaser has the requisite power and authority to purchase the Asset from Seller, execute and deliver this Agreement, and to perform the transactions contemplated hereby or thereby.

4.3. <u>Due Execution; Validly Binding</u>.  This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights in general and subject to general principles of equity.

4.4. <u>No Litigation</u>.  There is no suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry, pending or threatened, against Purchaser that could prevent or prohibit Purchaser from purchasing the Asset or from otherwise complying in full with the provisions of this Agreement. Transfer of the Asset pursuant to this Agreement will not breach, violate or otherwise contravene any applicable law, statute, regulation or contractual term.

4.5. <u>Purchaser Solvent</u>.  That Purchaser is solvent and has the funds available to pay the Purchase Price as provided in section 2.2 herein.

4.6. <u>Disclaimers: No Representations or Warranties</u>.  Purchaser expressly disclaims and does not make any warranties, guarantees, promises, or representations of any kind whatsoever regarding the Asset, including but not limited to: (i) the value of the Asset; and (ii) the anticipated recovery or timing of recovery on the Asset.  Purchaser has advised Seller that it should consult with an attorney and/or other relevant professional advisors prior to the execution of this Agreement.

4.7. <u>Independent Investigation</u>.  Aside from Representations or Warranties contained herein, Purchaser acknowledges that it has conducted its own independent evaluation of the transactions contemplated under this Agreement.  Purchaser further acknowledges that it has had an opportunity to conduct its own independent investigation regarding the Litigation, the possibility of a Settlement Event taking place, and the Asset.  Purchaser has had an opportunity to review the documents and information available through publicly available sources of information.

4.8. <u>No Reliance</u>.  Aside from Representations or Warranties contained herein, Purchaser has conducted an independent evaluation of the transactions contemplated under this Agreement.  Purchaser has decided to enter into this Agreement and undertake the transactions contemplated hereunder solely in reliance on its own evaluation, based on such information as it has deemed appropriate under the circumstances.  With the exception of any representations and warranties set forth in Section 3 of this Agreement, Purchaser is not relying on (i) any information provided to Purchaser or written or oral representations, whether express or implied, by Seller or its agents or affiliates or (ii) any information provided to Purchaser by Seller or its agents or affiliates.  Purchaser acknowledges that Seller expressly disclaims and has not made any warranties, guarantees, promises, or representations of any kind whatsoever regarding the Asset, including, but not limited to: (i) the value of the Asset; and (ii) the anticipated recovery and/or timing of recovery on the Asset.

4.9. <u>Information</u>.  Aside from Representations or Warranties contained herein, Purchaser acknowledges that, because a Settlement Event had not taken place prior to the payment of the Purchase Price, the value of the Asset and the final recovery on the Asset may not be determined with certainty by Seller or Purchaser as of the time of execution of this Agreement.  Purchaser further acknowledges that Seller may possess material information not known to it.  Purchaser agrees that Seller shall have no liability with respect to the non-disclosure of any such information.

4.10. <u>Expectation of Return</u>. Purchaser understands that Purchaser's recovery on the Asset may not exceed the Purchase Price.

4.11. <u>Own Advisors</u>.  Purchaser acknowledges that it has had an opportunity to consult with an attorney and/or other relevant professional advisors prior to the execution of this

Agreement. Purchaser acknowledges that Seller has advised it that it should seek such counsel.

4.12. <u>No Fiduciary or Confidential Relationship</u>.  Purchaser acknowledges that Seller and Purchaser are not in a fiduciary, confidential, agency or otherwise special relationship, including one of trust, confidence or privity, and that Seller and Purchaser are each acting for its own self interest.

**SECTION 5 - COVENANTS OF SELLER**

Seller covenants to Purchaser as follows:

5.1. <u>Further Assurances</u>.  Seller will reasonably provide, duly execute or deliver, or cause to be provided, duly executed or delivered, to Purchaser such further information and instruments reasonably available to it or under its possession, custody or control and do and cause to be done such further acts as may be reasonably necessary or proper to respond to any audit or inquiry by the CA, Lead Counsel or the District Court regarding the Asset.

5.2. <u>Waiver of Claims</u>.  To the maximum extent permitted by law, Seller will not assert and hereby waives any and all claims against Purchaser or any of its shareholders, officers, directors, employees, agents or affiliates with respect to this Agreement, any Ancillary Agreement or the transactions contemplated hereby or thereby based on any claim that Purchaser had superior or additional information material to a decision to sell or buy the Asset.

5.3. <u>Covenant Not To Sue</u>.  Seller will not commence or maintain any suit thereon against Purchaser or any of its shareholders, officers, directors, employees, agents or affiliates with respect to this Agreement, or the transactions contemplated hereby, whether at law or in equity, based on any claim that Purchaser had superior or additional information material to a decision to sell or buy the Asset.

5.4. <u>Payment Delivery</u>.  If a CA mistakenly sends total or partial payment directly to Seller, Seller will immediately endorse such payment to Purchaser and deliver the payment to Purchaser by personal delivery or by first class mail, certified, return receipt requested, postage prepaid and addressed to:

> Pantoll Partners, LLC
> c/o Cascade Settlement Services, LLC
> 100 Shoreline Highway, Suite A-190
> Mill Valley, CA 94941
> Attn: John Chilcott

**SECTION 6 - GENERAL**

6.1. <u>Severability</u>. In the event that any provision herein becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without said provision.

6.2. <u>Costs</u>. The Parties shall each pay their own costs and expenses (including attorney's fees and accountants' fees) incurred or to be incurred in negotiating, preparing and executing this Agreement.

6.3. <u>Entire Agreement</u>. This Agreement represents the entire agreement and understanding between the Parties regarding the sale and purchase of the Asset and supersedes any and all prior representations, warranties agreements and understandings, whether written or oral, concerning the sale and/or purchase of the Asset.

6.4. <u>No Oral Modification</u>. This Agreement may only be amended in writing signed by both Parties.

6.5. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to its conflict of law rules, principles or provisions of such state or of any other state.

6.6. <u>Headings</u>. Section headings are for convenient reference only and will not affect the meaning or have any bearing on the interpretation of any provision of this Agreement.

6.7. <u>Counterparts</u>. This Agreement may be executed in counterparts, and each counterpart shall have the same force and effect as an original and shall constitute an effective, binding agreement. If so signed the Agreement becomes effective when both signature pages are attached.

6.8. <u>Voluntary Execution of Agreement</u>. This Agreement is executed voluntarily and without any duress or undue influence on the part or on behalf of the Parties hereto.

6.9. <u>References</u>. Seller agrees that Purchaser may disclose Seller's identity and the Purchase Price only to prospective sellers in an effort to promote Purchaser's business. No other disclosures for any other reason are permitted without further written permission from Seller.

6.10. <u>Notices</u>. All notices, requests, demands or any other communication made under, pursuant to, or in accordance with this Agreement, except for normal day-to-day business communications, which may be made orally or in a writing, shall be in writing and shall either be delivered personally or deposited in the United States mail and sent by first-class mail, certified, return receipt requested, postage prepaid and properly addressed as follows:

| If to Purchaser: | If to Seller: |
|---|---|
| Pantoll Partners, LLC<br>c/o Cascade Settlement Services, LLC<br>100 Shoreline Highway, Suite A-190<br>Mill Valley, CA 94941<br>Attn: John Chilcott | TSIC, Inc.<br>PO Box 3508<br>Walnut Creek, CA 94598<br>Attention: Kevin Palmer |

or to such other address(es) as a Party hereto may indicate to the other Party in the manner provided for herein. Notices given by mail shall be deemed effective and complete forty-eight (48) hours following the time of posting and mailing, and notices delivered personally shall be deemed effective and complete at the time of delivery and the obtaining of a signed receipt.

IN WITNESS WHEREOF, the Agreement has been executed by the Parties as of the date and year provided above.

PANTOLL PARTNERS, LLC                 TSIC, INC. F/K/A SHARPER IMAGE CORPORATION

By: John Chilcott                     By:

By: _____            By: _____
Name: John Chilcott                   Name: Kevin Palmer
Title: Manager                        Title: Vice President and Controller